# EXHIBIT  A

1  LINDBERGH PORTER, Bar No. 100091
   lporter@littler.com
2  ROBERT M. GEIGER, Bar No. 322914
   rgeiger@littler.com
3  LITTLER MENDELSON, P.C.
   333 Bush Street, 34th Floor
4  San Francisco, CA  94104
   Telephone:   415.433.1940
5  Facsimile:   415.399.8490

6  Attorneys for Defendant
   RECOLOGY, INC.

7

8              SUPERIOR COURT OF CALIFORNIA

9                COUNTY OF SAN FRANCISCO

10 GABRIELLA TABAK, individually and as       Case No.  CGC-21-594674
   Guardian Ad Litem for minors  **B.T.**
11      ,     **A.T.**      , and  **L.T.**    **NOTICE TO ADVERSE PARTY AND**
        ; THE ESTATE OF ADAM               **STATE COURT OF REMOVAL OF CIVIL**
12 TABAK, DECEASED,                        **ACTION TO FEDERAL COURT**

13               Plaintiffs,
                                           Complaint Filed: 08/20/2021
14 v.                                      Department: 610

15 RECOLOGY, INC.; and DOES 1 TO 100,
   inclusive,
16
                 Defendant.
17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S NOTICE TO ADVERSE PARTY AND STATE COURT OF REMOVAL OF CIVIL ACTION TO
FEDERAL COURT

4859-2014-6689.1 / 016440-2779

1  TO THE CLERK OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN

2  FRANCISCO, PLAINTIFFS, AND THEIR ATTORNEY OF RECORD:

3        PLEASE TAKE NOTICE that on October 29, 2021, Defendant Recology, Inc., filed a

4  Notice of Removal of Civil Action to Federal Court of this action pursuant to 28 U.S.C. Sections 1331,

5  1441 and 1446 ("Notice") in the United States District Court for the Northern District of California.

6  A copy of the Notice and its accompanying exhibits are attached hereto as **Exhibit 1**.

7        PLEASE TAKE FURTHER NOTICE that by the filing of such Notice and by filing

8  herein of this Notice to Adverse Party and State Court of Removal of Civil Action to Federal Court,

9  the above-entitled action has been removed from this Court to the United States District Court for the

10  Northern District of California.

11  Dated: October 29, 2021

12

13  _____

14  LINDBERGH PORTER
   ROBERT M. GEIGER
15  LITTLER MENDELSON, P.C.
   Attorneys for Defendant
16  RECOLOGY, INC.

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEFENDANT'S NOTICE TO ADVERSE PARTY AND STATE COURT OF REMOVAL OF CIVIL ACTION TO
FEDERAL COURT

4859-2014-6689.1 / 016440-2779

# EXHIBIT  B

JOEL H. SIEGAL [SBN: 117044]
RICHARD L. RICHARDSON [SB: 250676]
**SIEGAL & RICHARDSON, LLP**
436 14th Street, Suite 1106
Oakland, California 94612
Telephone: (510) 271-6720
Facsimile: (510) 500-9512
Email: joelsiegal@yahoo.com; richard@rrichardsonlaw.com

ELECTRONICALLY
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**08/20/2021**
**Clerk of the Court**
BY: JACKIE LAPREVOTTE
Deputy Clerk

Attorneys for Plaintiff
GABRIELLA TABAK, individually and as Guardian Ad Litem for minors **B.T.** , **A.T.** , and **L.T.** ; THE ESTATE OF ADAM TABAK, DECEASED

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
## (UNLIMITED CIVIL JURISDICTION)

**CGC-21-594674**

| | |
|---|---|
| GABRIELLA TABAK, individually and as Guardian Ad Litem for minors **B.T.** , **A.T.** , and **L.T.** ; THE ESTATE OF ADAM TABAK, DECEASED, <br><br> Plaintiffs, <br><br> v. <br><br> RECOLOGY, INC.; and DOES 1 TO 100, inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION** <br><br> 1) Wrongful Death/Survival in Negligence <br> 2) Negligent Hire, Supervision, Retention <br> 3) False Imprisonment <br> 4) Intentionally False/Reckless Misrepresentation <br> 5) Deceit <br> 6) Violation of § 12940 <br> 7) Violation of § 12940(M) <br> 8) Failure to Engage in Interactive Process <br> 9) Disability Discrimination <br> 10) Termination in Violation of Public Policy <br> 11) Violation of FMLA <br> 12) Violation CFRA <br> 13) FMLA |

**INTRODUCTION**

"But I'm not guilty," said K. "there's been a mistake. How is it even possible for someone to be guilty? We're all human beings here, one like the other." "That is true," said the priest "but that is how the guilty speak."

Franz Kafka, The Trial.

Someone must have slandered Josef K., for one morning, without having done anything truly wrong, he was arrested.

Franz Kafka, The Trial.

As confirmed by the United States Department of Justice press release issued November 18, 2020, attached hereto as **Exhibit 1**, entitled "Recology Executive Laundered $1 Million in Bribes, Often Through An Intermediary Charity, To Former DPW Director":

Paul Frederick Giusti, the former Group Government & Community Relations Manager for Recology's San Francisco Group, has been charged in a federal criminal complaint with bribery and money laundering, announced United States Attorney David L. Anderson, IRS Criminal Investigation Special Agent in Charge Kareem Carter, and Federal Bureau of Investigations Special Agent in Charge Craig D. Fair.

The complaint alleges that Giusti, 64, of San Francisco, engaged in a long-term scheme to defraud the public of its rights to honest services and laundered money in the process. The complaint alleges that Giusti was a central actor in Recology providing Nuru with a continuous stream of money and benefits, ultimately worth over $1 million, to influence Nuru to act in Recology's favor. According to the complaint, among other payments, Giusti agreed to give $20,000 to Mohammed Nuru, then San Francisco's Director of Public Works, to secure Nuru's support for Recology's efforts to implement a price increase on the 'tipping fees' it charged the City to dump materials at a Recology facility.

As part of the scheme, Giusti concealed the bribe as a 'holiday donation' from Recology to the Lefty O'Doul's Foundation for Kids, a non-profit organization for underprivileged children in San Francisco. Nick Bovis, the head of the Foundation, used the money to pay for an annual holiday party organized by Nuru for select DPW employees and other invited guests.

San Francisco Trash Company Executive Charge With Bribing Company's Chief San Francisco Government Regulator: Recology Executive Laundered $1 Million in Bribes, Often Through Intermediary Charity, to Former DPW Director.

With no evidence, two weeks later, Defendant Recology convened an inquisition of six lawyers, including five outside attorneys and one corporate counsel, to demand responses from the

Jewish Financial Controller of Recology, Adam Tabak. Tabak was ordered to attend the inquisition on December 1, 2020. Having done nothing wrong, but having been part of the company for fifteen years, Tabak was not initially advised that he was not a subject of the investigation. Tabak suffered a psychotic break down, which within one month led to his death. As will be shown through this Complaint, Defendants owed duties to Plaintiff, which they breached, and which ultimately caused the damages herein asserted.

Plaintiffs GABRIELLA TABAK, individually and as Guardian Ad Litem for her three minor children **B.T.**, **A.T.**, and **L.T.**, and as representative of the ESTATE OF ADAM TABAK, deceased ("Plaintiffs"), by and through their attorneys of record, file this Complaint against RECOLOGY, INC. and DOES 1 through 100, inclusive. Plaintiffs hereby allege as set forth below:

## GENERAL ALLEGATIONS

1.      This case is about the unnecessary and tragic death of Adam Tabak. Adam was a forty-five-year-old married father of three young children, **B.T.**, **A.T.**, and **L.T.**. At the time of his death, on January 2, 2021, Adam was the controller for defendant RECOLOGY, INC. ("RECOLOGY") Adam worked for the RECOLOGY corporate office. He was a RECOLOGY employee for fifteen (15) years.

2.      Defendant RECOLOGY has found itself in the news recently. This complaint cites these facts, not to denigrate the Defendant, but simply to assert a relevant fact. On April 15, 2021, a former RECOLOGY vice president, John Francis Porter, group manager of RECOLOGY's San Francisco Group was charged with money laundering and bribery as part of an alleged attempt to increase San Francisco's dumping fees to the waste management company. Mr. Porter became the second RECOLOGY executive charged with fraud and money laundering. In November of 2020, the United States indicted RECOLOGY executive Paul Frederick Giusti.

3.      On March 4, 2021, RECOLOGY, INC. agreed to a $100 million settlement of refunds for trash and recycling overcharges. On that date, San Francisco City Attorney Dennis Herrera announced that RECOLOGY would reimburse ratepayers $94.5 million in overcharges and interest,

as well as lower residential and commercial refuse rates starting on April 1, 2021. SF Gate, March 5, 2021. RECOLOGY would make a $7 million settlement payment to the City under the California Unfair Competition Law and the San Francisco Campaign and Governmental Conduct Code. He said that RECOLOGY would be under a four-year injunction prohibiting the company from making any gift to city employees or non-profits at the behest of city officials. Finally, Mr. Herrera revealed on March 4, 2021 that a joint public integrity review by the City Attorney's Office and the Controller's Office was ongoing, touched off by the arrest of Mohammed Nury, Director of San Francisco Public Works, by the Federal Bureau of Investigations in January 2020. Among the allegations that led to Nuru's arrest, Nuru regularly solicited funds from RECOLOGY for his own benefit and that of city employees. RECOLOGY and its affiliated companies, Sunset Scavenger Company and Golden Gate Disposal & Recycling Company, regularly provided gifts of money, meals, and accommodations to city employees, allegedly to influence decisions affecting RECOLOGY. Adam Tabak worked for the corporate office, not San Francisco office.

4.      On information and belief, Gary Chen is an attorney who spearheaded the inquisition, along with a team of Morrison & Forrester lawyers on Adam Tabak, ultimately causing Tabak's death.

5.      As it relates to Plaintiffs, the essential facts of this case commence at a meeting called by RECOLOGY's inhouse counsel, Mr. Chen. The meeting, which occurred on December 1, 2020, was attended by RECOLOGY's inhouse counsel, Mr. Chen, and at least four outside counsel from the firm of Morrison & Forrester, and Adam Tabak. The specific words articulated by Defendant's representatives at this meeting were so threatening, hostile, oppressive, and fraudulent that Plaintiff was sent into a psychotic breakdown. At no time during the meeting did any of the lawyers advise Tabak that he was not a target of any investigation. In fact, Chen and outside counsel, through their words, actions, body language, and representations, in essence accused Tabak of criminal or civil or moral wrongdoing. While none of these accusations were true, accusing the Jewish financial controller of improprieties met an ancient anti-Semitic trope. Following the meeting, Mr. Tabak did not eat or sleep for three (3) days. He voluntarily had himself committed to a hospital on a 5150 hold. Ultimately, on January 2, 2021, just one month after that offensive meeting, Plaintiff took his own life by stabbing

himself with a kitchen knife in front of his wife and children. Plaintiff worked for RECOLOGY for fifteen (15) years and was never disciplined, investigated, or questioned during his long tenure. He consistently was given good reviews, raises, and promotions.

6.    The meeting, which will be described herein to the best of Plaintiffs' ability, was one where five (5) figures of authority from RECOLOGY willfully and wrongfully accused Plaintiff of wrongdoing without reasonable basis for the allegation. The alleged wrongdoing of Mr. Tabak asserted at the meeting went beyond his alleged failures to detect fraud and financial improprieties in the company. The false allegations articulated against Adam, without any reasonable basis, were that he himself participated in fraud. This was done without a scintilla of evidence against Mr. Tabak. It was further done in an effect to deflect blame and illegality from senior corporate officials. Deflecting blame to Mr. Tabak, a Jewish financial controller of Defendant's corporation, would play into the ancient anti-Semitic trope. The psychotic break that Mr. Tabak suffered commenced with this outrageous meeting on December 1, 2020. It ceased on January 2, 2021, several hours after Mr. Tabak first stabbed himself, when he ultimately died.

7.    Plaintiffs are informed and believe, and thereon allege, that at all times herein RECOLOGY, INC. and DOES 1 through 100, inclusive, owed fiduciary obligations to its employee, Adam Tabak. Those obligations include, but are not limited to, treating him in good faith and fair dealing and not wrongfully or fraudulently accusing him of wrongdoing.

8.    Plaintiffs are informed and believe, and thereon allege, that at all times herein relevant, RECOLOGY, INC. and DOES 1 through 100, inclusive, conspired and created a fraudulent accusation against Adam Tabak that somehow he was involved in corporate fraud. Such allegations are absolutely false, yet sent Mr. Tabak into a psychotic break in which he ultimately took his own life.

9.    Plaintiffs are informed and believe, and thereon allege, that at all times herein relevant, RECOLOGY, INC. was located in San Francisco, San Francisco County, California.

10.    Plaintiff GABRIELLA TABAK, at all times herein relevant, was a resident of Marin County, California, and is the surviving spouse of the Decedent Adam Tabak ("Decedent").

12.    Plaintiff THE ESTATE OF ADAM TABAK is represented by and through its Successor-in-Interest GABRIELLA TABAK pursuant to *Code of Civil Procedure* § 377.60.

13.    Plaintiff **B.T.**    , at all time herein relevant, was a resident of Marin County California, and is a surviving son of Decedent.

14.    Plaintiff **A.T.**    , at all times herein relevant, is a resident of Marin County, California, and is a surviving daughter of Decedent.

15.    Plaintiff **L.T.**    , at all times herein relevant, is a resident of Marin County, California and is a surviving son of the Decedent.

16.    Defendant RECOLOGY, INC. ("Defendant"), at all times herein relevant, is a California corporation and is authorized to do business in California, with its office located in San Francisco, California.

17.    The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of DOES through 100, inclusive, are unknown to Plaintiffs who therefore sue said defendants by such fictitious names. The full extent of the facts linking such fictitiously sued defendants is unknown to Plaintiffs. Plaintiffs are informed and believe, and thereupon allege, that each of the defendants designated herein as a DOE was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to Plaintiffs. Plaintiffs will hereafter seek leave of the Court to amend this Complaint to show the defendants' true names and capacities after the same have been ascertained.

18.    Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, RECOLOGY, INC. and DOES 1 through 100, inclusive, were agents, servants, employees, successors in interest, partners, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that each and every defendant, as aforesaid, when acting as principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer.

19.     Adam Tabak was Jewish and a member of a protected class.

20.     Following the December 1, 2020 meeting, Adam Tabak had a psychotic breakdown. As such, he was disabled and a member of a protected class.

21.     Defendant RECOLOGY, INC. formerly known as NorCal Waste Systems, is a waste management company with its headquarters in San Francisco. The company collects and processes municipal solid waste. The company also operates transfer stations, material recovery facilities and landfills. RECOLOGY, INC. is the parent to approximately forty (40) operating companies, including Recology San Francisco, Recology Clean Scopes (Seattle), and Recology Portland. According to a 2011 New York Times article, RECOLOGY, INC.:

> "…has a long history in the Bay Area, and holds a no-bid contract for garbage collection in San Francisco. In 1932, the city granted a permanent concession to the city's 97 independent garbage collectors; shortly thereafter those 97 independents banded together to form the company that would become Norcal Waste Systems. Since that time, the company has held a permanent no-bid, no-franchise-fee contract to collect the city's garbage…"

On information and belief, RECOLOGY has contracts with several municipalities, including the federal government.

### ADAM TABAK

22.     For the forty-five (45) years immediately prior to December 2020, Adam Tabak was an exemplar of a model citizen. He had a strong and healthy marriage to his wife Gabi. He was a great father to three wonderful young children, ages fifteen (15), twelve (12), and eight (8). He lived for his family and he did everything for them. He spent every spare moment with them. For the forty-five years immediately prior to December 2020, Adam had no prior mental health challenges and no mental health diagnosis. He had not even seen a therapist or psychiatrist. He was healthy, stable, level-headed, mellow, and honest. He was employed by RECOLOGY for fifteen years (beginning in 2005) and was the Vice President Director, Controller for the company's corporate headquarters. He was never disciplined, terminated, or accused of any impropriety during his fifteen-year tenure.

23.     On or about December 1, 2020, Adam was ordered to attend a meeting with the RECOLOGY, INC. attorney and five other persons. On information and belief, one of the persons present at the meeting was the forty-year-old Senior Vice President and Chief Legal Officer Cory Chen. On information and belief, there were four or five other persons at the meeting.

24.     During the meeting on December 1, 2020, Defendant used threats, fraud, deceit, menace, and unreasonable duress to intentionally deprive Adam Tabak's freedom of movement. Adam did not voluntarily consent to staying at the meeting. In fact, Tabak physically attempted to leave the meeting; however, due to intentional threats, fraud, deceit, menace and unreasonable duress by Defendant, Adam was not allowed to leave the room. Prior to the meeting, Adam was given no agenda. He did not know what the purpose of the meeting was. He was not given an opportunity to review any document or file prior to the meeting. Even as the meeting commenced, the persons conducting the meeting, including Cory Chen and the four or five others, never advised Adam as to whether he was being investigated for wrongdoing or whether or not the interrogatories were simply attempting to garner information. Instead, during the meeting, the interrogatories made it clear that Adam was to be the scapegoat for the fraudulent and illegal actions at RECOLOGY.

25.     Following the meeting, Adam immediately called his sister, Maxine Nise. Adam told Maxine that he was very scared as a result of the meeting and felt he was pushed into a corner and was being framed for something he did not do. He said he asked multiple times during the meeting to end the meeting and re-convene at a later time so he could collect himself and do his own due diligence to try to answer the pointed and difficult questions he was being asked. The attorneys resisted, did not listen, proceeded with the meeting, and would not let him leave the meeting. He told his sister that the attorneys present at the meeting shamed him, pointed the finger at him, and wanted him (without any warning) to answer detailed questions from years prior that he could not recall off the top of his head (since he was not given any agenda in advance).

26.     Sometime following the meeting, the internal counsel called Adam sharing that he was sorry he did not inform Ada previously that he was not under investigation. By that point, Adam was already frightened, based on the allegations made in the meeting, and did not know what to believe.

He knew there were investigations happening, both internally and externally [by the Federal Bureau of Investigations (FBI)] and did not know how he might be questioned. He was told that everything needed to be confidential and he was not allowed to discuss any questioning/investigation with anyone (both at the company or outside). As a result, he was very concerned about even sharing information with his wife, his sister, or his brother (the only three people with which he shared this).

27.     In the meantime, RECOLOGY was in the news regarding the investigation of a former employee (Paul Giusti), who was charged by the FBI with white collar crimes (bribery and money laundering associated with the Department of Water and Power. Adam was not associated with this individual as Adam was at Headquarters and Mr. Giusti worked for the San Francisco RECOLOGY office. They did have an interaction when they once were in the same group on a community service activity.

28.     From the December 1, 2020 meeting forward, Adam did not sleep or eat for three nights and three days. He was not the same. He was worried. He believed that the company that he had worked for for fifteen years was setting him up as a scapegoat for financial improprieties. Although Adam had done nothing wrong, a psychiatrist later diagnosed the Defendant's treatment of him during that meeting as having caused a psychotic break that ultimately took his life A meeting whereby you are required to attend; whereby you are not given an agenda; whereby you are not advised that you are not a target of an investigation; whereby you are accused of fraud, embezzlement, and money laundering, is not a benefit of the bargain of the workers' compensation system. As noted by the California Supreme Court in *Fermino v. Fedco*, 7 Cal. 4th 701 (1994), the Court expanded an employee's rights to sue his employer for misconduct that falls outside the compensation bargain. Courts have generally limited this exception to employer misconduct that is not a "normal part of the employment relationship" (*Id.* At 715). The specifically enumerated exceptions found in the Labor Code such as false imprisonment, disability discrimination, defamation and wrongful termination in violation of public policy. As confirmed in *Davaris v. Cubaleski* (1993), 12 Cal. App. 4th 1583, defamatory statements made to damage employee's reputation are neither a "normal part of the

employment relationship" nor risk of employment within the exclusivity of the Workers' Compensation Act.

29.    Following the meeting, Adam was extremely concerned by the odd fact that he did not receive any further emails and no further meetings were held to follow up (he did receive invites which would appear and then suddenly get cancelled, which added to Mr. Tabak's concern). He shared with his sister that he even had an interview that seemed very strange that popped up on his calendar out of nowhere. This was not at all typical of Mr. Tabak's workflow during the day and that worried him. Adam was given no support or direction from management following the meeting. He continued to not eat or sleep. As later diagnosed, Adam suffered a psychotic break down as a result of the defamation and false allegations made against him.

30.    Adam was discharged from a 5150 – 72-hour hold from Marin General Hospital on December 7, 2020. Details in that report indicate he was delusional and it was brought on by work. The report also mentioned a potential diagnosis of Delusional Disorder.

31.    As part of his discharge, he agreed to see a psychiatrist/therapist. He was referred to and saw Dr. David May upon his release from the Hospital on December 15, 2020, as that was the doctor's first available appointment. Dr. May also assessed Adam as suffering from Delusional Disorder caused by an external environmental trigger: the December 1 meeting and extreme work stress.

32.    There were no resources made available to Adam by Recology, no support and no one he could reach out to at Recology. He did not feel he could talk to anybody about what he was going through and told his sister, "I can't trust anybody." He did not know whom he could trust at Recology and stated that they offered no guidance or support while there were investigations happening.

33.    Adam also saw his primary care physician Dr. Nadine Aldahhan on Thursday, December 10, 2020 as a follow up from his hospital discharge.

34.    Recology's CFO Cathy Langridge (Adam's boss) texted Adam's wife, Gabrielle Tabak, on Thursday, December 10, 2020 that she wanted to have Adam's Recology laptop and cellphone picked up right way. Gabrielle requested that it wait a day, as they had appointments to go

to that were a priority as a result of Adam's 5150 discharge. Adam's Recology cellphone and laptop were picked up by a service on Friday, December 11, 2020 (four days after his release from a three-day psychiatric hold at the hospital). Cathy also said in the text she wanted someone to talk them through getting access to Adam's iCloud account, despite the fact that Adam had just returned from the hospital for mental health challenges.

35.     Recology picked up Adam's cellphone and laptop with no explanation, even though Gabrielle and Adam asked for an explanation of the sudden urgency and importance while Adam was suffering from paranoia and just released from the 5150 hold at the hospital. This further led Adam to more delusional thinking and paranoia. He grew more and more concerned.

36.     Adam took family medical leave from work beginning on December 7, 2020 and authorized by his primary care physician Dr. Aldahhan on December 17, 2020. At that time, it was estimated he may return to work on January 4, 2021.

37.     On Wednesday, December 23, 2020, and again on Wednesday, December 30, 2020, Adam went on two walks with Miss Langridge in Marin. He met with her with the intention of wanting to hear what she thought he should do regarding returning to work. Knowing the details of his 5150 hospitalization, and the fact that he was on family medical leave, he felt she was the only one he could talk to about possibly returning to work on January 4, 2021. He felt bad about not being with his team.

38.     When his sister Maxine asked About about quitting and not just taking family medical leave, he said he did not want to leave his team behind or not follow through on his commitment to them. He also said he was worried about being followed and framed in the investigations. He felt it would look like he was at fault if he quit and he waws not at fault for anything.

39.     Because he was determined to return to work, his sister Maxine felt (and he agreed) that it was important to have legal counsel of his own. They were referred to a white-collar attorney in San Francisco named Doug Rappaport. Maxine drove Adam to the meeting on December 29, 2020 and walked him into the office where Adam had a twenty-minute consult with the attorney and his associate. When they left the building, Adam was convinced the attorney was with the Federal Bureau of Investigations (FBI). He was still having delusions and was paranoid and consumed with worries

that his phone was tapped and his house would be raided. These were delusions that only commenced following the December 1, 2020 meeting.

40.  Adam was not involved in any form of white-collar crime but he felt he was shamed by the attorneys.

42.  Dr. May, Adam's therapist, later shared a voicemail Adam left for him on December 31, 2020 in which he requested a session for Sunday, January 3, 2021, as he intended to return to work on January 4, 2021. He wanted to meet with Dr. May the day before so that he could return to work with a clear head.

43.  On Friday, January 1, 2021, Adam received an email from his boss, Miss Langridge, requesting Adam to send over attachments or images of Recology lease agreements for their California Street location. It was inappropriate for her to be asking Adam to do any work while he was on family medical leave and in condition to be working. Adam and his family never received any explanation of why Adam's phone and laptop were taken away so swiftly after he had just returned from the hospital and was on family medical leave. These actions by Recology drove him to further paranoia and delusions.

44.  On Saturday, January 2, 2021, Adam brutally stabbed himself to death in front of his wife and children in the family home. The cause of death was suicide, brought on by a psychotic break due to the December 1, 2020 meeting. Adam did not die immediately. He lingered in pain before his wife and children.

## FIRST CAUSE OF ACTION

### Wrongful Death and Survival Action Sounding in Negligence

45.  Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

46.  Adam Tabak was placed under unreasonable mental and physical distress by Defendant and died on January 2, 2021.

47.  Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant owed a duty of care to all reasonably foreseeable people, including Decedent Adam

Tabak and Plaintiffs, to plan, organize, and execute the December 1, 2020 meeting in a reasonably safe manner.

48.     Plaintiffs are informed and believe, and thereon allege, that Defendant's said careless, negligent, reckless and unlawful conduct, including but not limited to falsely accusing Tabak of committing a crime, on and around December 1, 2020, was the direct, legal and proximate cause of the fatal injuries sustained by Decedent Adam Tabak and the damages to Plaintiffs as herein alleged.

49.     The aforementioned subject incident giving rise to this wrongful death and survival action caused Decedent Adam Tabak to suffer various traumatic injuries. As a legal, direct and proximate result of the conduct of said Defendants, Decedent Adam Tabak suffered pre-death physical injuries, mental anguish, terror, anxiety and unconsciousness.

50.     Plaintiffs are further informed and believe, and thereon allege, that Defendant was assisting, facilitating, encouraging and otherwise condoning all attendants at the December 1, 2020 meeting intentional, negligent and reckless conduct and as such is therefore liable for their negligent and reckless behavior.

51.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant Recology, Inc. and Does 1 through 100, inclusive, carelessly, negligently, recklessly and with conscious disregard for the welfare and safety of others, including Decedent Adam Tabak, organized and executed the December 1, 2020 meeting so as to legally and proximately cause the death of Adam Tabak.

52.     As a legal, direct and proximate result of the reckless and negligent conduct of Defendant Recology, Inc. and Does 1 through 100, inclusive, Plaintiffs have sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support and counseling, companionship, solace and mental support, as well as other benefits and assistance of Decedent Adam Tabak, all to their general damages in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

53. As a legal, direct and proximate result of the conduct of Defendant Recology and Does 1 through 100, inclusive, Plaintiffs will be deprived of the financial support and assistance of Decedent Adam Tabak, the exact amount of such losses to be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

## SECOND CAUSE OF ACTION

### Negligent Hire, Supervision, Retention

54. Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

55. Plaintiffs are informed and believe, and thereupon allege, that at all times herein relevant, Recology, Inc. hired, retained, supervised, trained and scheduled the other participants in the December 1, 2020 meeting.

56. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant Recology, Inc. and Does 1 through 100, inclusive, were negligent by failing to provide any or sufficient training or supervision to any person participating in the December 1, 2020 meeting.

57. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants and Does 1 through 100, inclusive, owed a duty of care to the public, including Decedent Adam Tabak and Plaintiffs, in the hiring, retention, supervision and training of their agents, employees, servants, and/or independent contractors, which they assigned to the December 1, 2020 meeting.

58. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant and Does 1 through 100, inclusive, breached that duty by failing to act reasonably in the hiring, retention, supervision and training of their agents, employees, servants and/or independent contractors, attorneys or others attending the December 1, 2020 meeting. Defendants hired other employees and agents that were present in the meeting when Defendant knew or should have known that said employees and agents were incompetent and unfit to perform their jobs.

59.     Plaintiffs are informed and believe, and thereon allege, that the aforementioned negligent hiring, retention, supervision and training of those that attended the December 1, 2020 meeting of Defendants and Does 1 through 100, inclusive, directly, legally and proximately caused or was a substantial factor in causing Adam Tabak's death on January 2, 2021.

60.     As a legal, direct and proximate result of the reckless and negligent conduct of Defendants and Does 1 through 100, inclusive, Plaintiffs have sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support and counseling, companionship, solace and mental support, as well as other benefits and assistance of Decedent Adam Tabak, all to their general damages in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

61.     As legal, direct and proximate result of the conduct of Defendants and Does 1 through 100, inclusive, Plaintiffs will be deprived of the financial support and assistance of Decedent Tabak, the exact amount of such losses to be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

### THIRD CAUSE OF ACTION

### False Imprisonment

62.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

63.     Defendant used threats, fraud, the threat of force, menace, deceit, and unreasonable duress to intentionally deprive Decedent Adam Tabak's freedom of movement.

64.     Decedent Tabak did not consent to continued participation in the December 1, 2020 meeting, and tried to physically leave. Decedent Adam Tabak physically attempted to leave the meeting; however, due to intentional threats, fraud, deceit, menace, and unreasonable duress by Defendant, Adam was not allowed to leave the room. Due to coercion, Tabak was compelled to stay for an approvable time.

65.     Defendant's conduct was a substantial factor in Adam Tabak's damages, including mental anguish, fear, psychological injuries, and aforementioned mental distress and anguish resulting in suicide.

## FOURTH CAUSE OF ACTION

### Intentionally False/Reckless Misrepresentation

66.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

67.     Defendant Recology represented to Adam Tabak that he (Tabak) was involved in numerous fraudulent and illegal transactions while employed at Recology.

68.     Recology knew those representations were false.

69.     Recology made the representations recklessly and without regard for the truth.

70.     Recology wanted Mr. Tabak to rely on the misrepresentations.

71.     Mr. Tabak was harmed.

72.     Recology's false misrepresentation was a substantial factor in causing Adam Tabak's harm.

## FIFTH CAUSE OF ACTION

### Deceit

73.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

74.     Defendant Recology, Inc. made misrepresentations to Decedent Adam Tabak.

75.     Defendant knew that the representations made to Mr. Tabak were not true.

76.     Defendant Recology, Inc. intended that Mr. Tabak would take some action in reliance upon Defendant's misrepresentations.

77.     Decedent did justifiably rely on Defendant's misrepresentations, and Decedent's reliance directly, legally and proximately caused or was a substantial factor in causing Decedent's death on January 2, 2021.

78. As a legal, direct and proximate result of Defendant's deceit, Plaintiffs have sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support and counseling, companionship, solace and mental support, as well as other benefits and assistance of Decedent Adam Tabak, all to their general damages in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

79. As legal, direct and proximate result of the conduct of Defendants, Plaintiffs will be deprived of the financial support and assistance of Decedent Tabak, the exact amount of such losses to be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

## <u>SIXTH CAUSE OF ACTION</u>

### Violation of Cal. Gov. Code § 12940

86. Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

87. On or about August 16, 2021, Plaintiff filed a timely charge of discrimination against Recology, Inc. with the California Department of Fair Employment and Housing ("DFEH").

88. On or about August 19, 2021, the DFEH issued Plaintiff a notice of right-to-sue in connection with this charge.

89. Plaintiff has exhausted administrative remedies available to him.

90. During the course of his employment with Recology, Inc., Plaintiff suffered from a serious mental disability and mental condition brought on by the December 1, 2020 meeting.

91. Defendant knew that Plaintiff had a mental disability and medical condition.

92. Plaintiff was able to perform the essential job duties with reasonable accommodation for his disability and mental condition. At all times during his employment, Plaintiff was otherwise qualified to do his job.

93. Defendant failed to accommodate Plaintiff's condition and failed to engage in an interactive process to determine how to accommodate his condition.

94.     Plaintiff suffered a psychotic break because Defendants failed to accommodate his condition and engage in an interactive process to determine how to accommodate his condition.

95.     As a result of Defendants' conduct, Plaintiff has suffered damages, including economic losses and emotional distress, in an amount to be determined at trial.

96.     Defendants' actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard for Plaintiff's rights.

## SEVENTH CAUSE OF ACTION

### Violation of Cal. Gov. Code § 12940(m)

97.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

98.     During the course of his employment with Recology, Inc. ("Recology"), Plaintiff suffered from a serious mental disability and medical condition that requires ongoing treatment and limits major life activities.

99.     Recology knew that Plaintiff had a mental disability and medical condition.

100.    Plaintiff was able to perform the essential job duties with reasonable accommodation for his physical disability and medical condition. At all times during his employment, Plaintiff was otherwise qualified to do his job.

101.    Recology failed to reasonably accommodate Plaintiff.

102.    As a result of Recology's conduct, Plaintiff has suffered damages, including economic losses and emotional distress, in an amount to be determined at trial.

103.    Recology's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure the Plaintiff and in conscious disregard of Plaintiff's rights.

## EIGHTH CAUSE OF ACTION

### Failure to Engage in the Interactive Process

104.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

105.     During the course of his employment with Recology, Plaintiff suffered from a serious mental disability and medical condition that requires ongoing treatment and limits major life activities.

106.     Recology knew that Plaintiff had a mental disability and medical condition.

107.     Plaintiff was able to perform the essential job duties with reasonable accommodation for his mental disability and medical condition. At all times during his employment, Plaintiff was otherwise qualified to do his job.

108.     Plaintiff attempted to obtain reasonable accommodations. Plaintiff was willing to participate in the interactive process to determine reasonable accommodation.

109.     Recology failed to engage in a timely good-faith interactive process with Plaintiff to determine an effective reasonable accommodation.

110.     As a result of Recology's conduct, Plaintiff has suffered damages, including economic losses and emotional distress, in an amount to be proven at trial.

111.     Recology's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure the Plaintiff and in conscious disregard of Plaintiff's rights.

## NINTH CAUSE OF ACTION

### Disability Discrimination

112.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

113.     Plaintiff had a mental impairment that substantially limited one or more of his major life activities.

114.     Plaintiff was able to safely perform the essential job duties with reasonable accommodation for his mental disability and medical condition. At all times during his employment, Plaintiff was otherwise qualified to do his job. Recology denied Plaintiff such accommodation.

115.     Recology did not address or grant Plaintiff's requests for accommodation. Despite Recology's knowledge of Plaintiff's mental impairment, Recology failed to engage in an interactive process to determine how to accommodate his condition.

116.    Adam was constructively discharged and forced to resign from Recology because Defendants failed to accommodate his condition and engage in an interactive process to determine how to accommodate his condition.

117.    As a result of Defendants' conduct, Plaintiff has suffered damages, including economic losses and emotional distress, in an amount to be determined at trial.

118.    Recology's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure the Plaintiff and in conscious disregard of Plaintiff's rights.

## **TENTH CAUSE OF ACTION**

### **Termination in Violation of Public Policy**

119.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

120.    During the course of his employment with Recology, Plaintiff suffered from a serious mental disability and medical condition that requires ongoing treatment and limits major life activities.

121.    Recology knew that Plaintiff had a mental disability and medical condition.

122.    Plaintiff was able to perform the essential job duties with reasonable accommodation for his mental disability and medical condition. At all times during his employment, Plaintiff was otherwise qualified to do his job.

123.    Recology did not address or grant Adam's requests for accommodation. Despite Recology's knowledge of Adam's mental impairment, Recology failed to engage in an interactive process to determine how to accommodate his condition.

124.    Adam was constructively discharged and forced to resign from Recology because Defendants failed to accommodate his condition and engage in an interactive process to determine how to accommodate his condition.

125.    By engaging in the conduct set forth above, Recology violated the public policy of the State of California.

126.     As a result of Defendants' conduct, Plaintiff has suffered damages, including economic losses and emotional distress, in an amount to be determined at trial.

127.     Recology's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure the Plaintiff and in conscious disregard of Plaintiff's rights.

## ELEVENTH CAUSE OF ACTION

### Violation of Family Medical Leave Act

128.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

129.     The Family Medical Leave Act ("FMLA") provides that an employer must reinstate an eligible employee on an approved FMLA leave to said employee's same position, or to an equivalent position, upon the termination of said employee's leave.

130.     Defendants were and are a covered employer under the FMLA, 29 U.S.C. § 2611(4)(A). At all times herein relevant, Plaintiff was an eligible employee on an approved FMLA leave for a serious health condition under 29 U.S.C. § 2611(2)(A), and 29 U.S.C. § 2612(a)(1)(A),(D).

131.     Defendants violated the FMLA by, *inter alia*, refusing to reinstate Plaintiff to his prior position or an equivalent position, and by terminating his employment the day before he was to return to work.

132.     As a direct and proximate result of these Defendants' conduct, Plaintiff has suffered special damages in an amount equal to 12 weeks of wages or salary under 29 U.S.C. § 2617(a)(1)(A)(i). Plaintiff is also entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii) as Defendants did not act in good faith and had no reasonable grounds for believing they were not violating the FMLA. Plaintiff is entitled to appropriate equitable relief, including employment, reinstatement and promotion under 29 U.S.C. § 2617(a)(1)(B).

133.     Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 2617(a)(1)(A)(3).

## TWELFTH CAUSE OF ACTION

### Violation of the California Family Rights Act

134.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

135.     The CFRA provides that an employer must provide an eligible employee with up to 12 work weeks of leave for a serious health condition, which includes a mental condition which requires inpatient care or incapacity from work. Plaintiff was an eligible employee under the CFRA.

136.     Defendants interfered with Decedent's rights under the CFRA by, *inter alia*, contacting Decedent during Decedent's period of approved leave with work requests, forcing him to continue working.

137.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out-of-pocket expenses in an amount according to proof at the time of trial. As a direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective damages in an amount according to proof at the time of trial.

138.     As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered mental and emotional pain, distress and discomfort, all to her detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

139.     In engaging in the conduct alleged herein, Defendants acted oppressively, maliciously, fraudulently and/or outrageously toward Plaintiff, with conscious disregard for his known rights and with the intention of causing, and/or willfully disregarding the probability of causing, unjust and cruel hardship to Plaintiff. In so acting, Defendants intended to and did vex, injure and annoy Plaintiff. Therefore, an assessment of punitive damages should be made against Defendants in an amount sufficient to punish them and to prevent them from willfully engaging in future unlawful conduct.

140.     Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to California Government Code § 12965(b).

## **THIRTEENTH CAUSE OF ACTION**

### **Violation of the Family Medical Leave Act**

141.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

142.     The FMLA provides that an employer must provide an eligible employee with up to 12 work weeks of leave for a serious health condition, which includes a mental condition which requires inpatient care or incapacity from work. Plaintiff was an eligible employee under the FMLA.

143.     Defendants interfered with Plaintiff's rights under the FMLA by, *inter alia*, contacting Decedent during Decedent's period of approved leave with work requests, forcing him to continue working.

144.     As a direct and proximate result of these Defendants' conduct, Plaintiff has suffered special damages in an amount equal to 12 weeks of wages or salary under 29 U.S.C. § 2617(a)(1)(A)(i). Plaintiff is also entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii) as Defendants did not act in good faith and had no reasonable grounds for believing they were not violating the FMLA. Plaintiff is entitled to appropriate equitable relief, including employment, reinstatement and promotion under 29 U.S.C. § 2617(a)(1)(B).

145.     Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 2617(a)(1)(A)(3).

### **JURY DEMAND**

146.     Plaintiffs demand a trial by jury.

### **PRAYER FOR RELIEF**

147.     For general damages according to proof on each cause of action for which such damages are available;

148.     For special damages, according to proof on each cause of action for which such damages are available;

149.     For compensatory damages, according to proof on each cause of action for which such damages are available;

150.    For punitive damages, according to proof on each cause of action for which such damages are available;

151.    For prejudgment and post-judgment interest, according to law;

152.    For reasonable attorneys' fees incurred in this action on those causes of action for which such fees are recoverable under the law;

153.    For costs of suit incurred in this action; and

154.    For such other and further relief as the Court deems proper and just.


DATED:  August 20, 2021                    **SIEGAL & RICHARDSON, LLP**


Joel H. Siegal
Attorney for Plaintiffs

# EXHIBIT  C

*U.S. Mail - UN.*
*October 5, 2021*
*@ 50 California*

# JOEL H. SIEGAL
**ATTORNEY AT LAW**

The Historic Central Building
436 14th Street, Suite 1106
Oakland, California 94612
Telephone: 510-271-6720

September 29, 2021

Cary Chen
Executive Vice President
Chief Legal Officer
50 California Street, 24th Floor
San Francisco, Ca. 94111

Re: Tabak v. Recology Inc.
San Francisco Superior Court CGC 21- 594674

Dear Mr. Chen:

Attached is a Notice and Acknowledgement of Receipt as well as a SASE. Will you sign the notice and acknowledgement of Receipt? Please advise

Thank you.

Sincerely,

Joel H. Siegal

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 117044 | *FOR COURT USE ONLY* |
|---|---|---|
| NAME: Joel Siegal | | |
| FIRM NAME: Siegal Richardson | | |
| STREET ADDRESS: 436- 14th Street, Suite 1106 | | |
| CITY: Oakland, Ca.     STATE:     ZIP CODE: 94612 | | |
| TELEPHONE NO.: 510-271-6720     FAX NO.: | | |
| E-MAIL ADDRESS: joelsiegal@yahoo.com | | |
| ATTORNEY FOR (Name): Plaintiffs | | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco |
|---|
| STREET ADDRESS: |
| MAILING ADDRESS: |
| CITY AND ZIP CODE: |
| BRANCH NAME: |

| Plaintiff/Petitioner: |
|---|
| Defendant/Respondent: |

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CGC 21- 594 674 |
|---|---|

TO *(insert name of party being served):* Recology Inc.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: September 29, 2021

Joel Siegal

(TYPE OR PRINT NAME)        ►        (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [x] A copy of the summons and of the complaint.
2. [ ] Other *(specify):*

*(To be completed by recipient):*

Date this form is signed: _____

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)        ►        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**    [ Print this form ]   [ Save this form ]    [ Clear this form ]

# SUMMONS
## *(CITACION JUDICIAL)*

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RECOLOGY, INC.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
GABRIELLA TABAK, individually and as Guardian Ad
Litem for minors **B.T.** , **A.T.** , and
**L.T.** , THE ESTATE OF ADAM TABAK, DECEASED

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*
Civic Center Courthouse
400 McAllister St., San Francisco, CA 94102

**CASE NUMBER:**
*(Número del Caso):*

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Joel H. Siegal         (510) 271-6720
436 14th St., Ste. 1106
Oakland, CA 94612
DATE:
*(Fecha)* August 21, 2021

Clerk, by _____ , Deputy
*(Secretario)*                         *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)         ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)

☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

CEB
www.ceb.com

Code of Civil Procedure §§ 412.20, 465
*www.courtinfo.ca.gov*

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):

Joel H. Siegal [SB: 117044]
436 14th Street, Suite 1106
Oakland, California 94612

TELEPHONE NO.: (510) 271-6720   FAX NO. (Optional): (510) 500-9512
ATTORNEY FOR (Name): Gabriella Tabak, et al.

**FOR COURT USE ONLY**

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**08/20/2021**
Clerk of the Court
BY: JACKIE LAPREVOTTE
Deputy Clerk

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, 94102
BRANCH NAME: Civic Center Courthouse

CASE NAME:
Gabriella Tabak, et al. v. Recology, Inc., et al.

| **CIVIL CASE COVER SHEET** | | **Complex Case Designation** | CASE NUMBER: |
|---|---|---|---|
| ☒ **Unlimited** (Amount demanded exceeds $25,000) | ☐ **Limited** (Amount demanded is $25,000) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | **CGC-21-594674** JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☒ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

2. This case ☐ is  ☒ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a. ☒ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☒ punitive
4. Number of causes of action (specify): 13
5. This case ☐ is  ☒ is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: August 20, 2021

Joel H. Siegal
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel)
    (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
            or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
        Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
        domain, landlord/tenant, or
        foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case
        Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
        Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of
        County)
    Confession of Judgment *(non-
        domestic relations)*
    Sister State Judgment
    Administrative Agency Award
        *(not unpaid taxes)*
    Petition/Certification of Entry of
        Judgment on Unpaid Taxes
    Other Enforcement of Judgment
        Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
        Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
        Claim
    Other Civil Petition

ELECTRONICALLY
**F I L E D**
Superior Court of California,
County of San Francisco

**08/20/2021**
**Clerk of the Court**
BY: JACKIE LAPREVOTTE
Deputy Clerk

JOEL H. SIEGAL [SBN: 117044]
RICHARD L. RICHARDSON [SB: 250676]
**SIEGAL & RICHARDSON, LLP**
436 14th Street, Suite 1106
Oakland, California 94612
Telephone: (510) 271-6720
Facsimile: (510) 500-9512
Email: joelsiegal@yahoo.com; richard@rrichardsonlaw.com

Attorneys for Plaintiff
GABRIELLA TABAK, individually and as Guardian Ad Litem for minors **B.T.**   , **A.T.**
   , and **L.T.**   ; THE ESTATE OF ADAM TABAK, DECEASED

## SUPERIOR COURT OF CALIFORNIA
## COUNTY OF SAN FRANCISCO
## (UNLIMITED CIVIL JURISDICTION)

**CGC-21-594674**

| | |
|---|---|
| GABRIELLA TABAK, individually and as Guardian Ad Litem for minors **B.T.**   , **A.T.**   , and **L.T.**   ; THE ESTATE OF ADAM TABAK, DECEASED, <br><br> Plaintiffs, <br><br> v. <br><br> RECOLOGY, INC.; and DOES 1 TO 100, inclusive, <br><br> Defendants. | Case No.: <br><br> **COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL ACTION** <br><br> 1) Wrongful Death/Survival in Negligence <br> 2) Negligent Hire, Supervision, Retention <br> 3) False Imprisonment <br> 4) Intentionally False/Reckless Misrepresentation <br> 5) Deceit <br> 6) Violation of § 12940 <br> 7) Violation of § 12940(M) <br> 8) Failure to Engage in Interactive Process <br> 9) Disability Discrimination <br> 10) Termination in Violation of Public Policy <br> 11) Violation of FMLA <br> 12) Violation CFRA <br> 13) FMLA |

## INTRODUCTION

"But I'm not guilty," said K. "there's been a mistake. How is it even possible for someone to be guilty? We're all human beings here, one like the other." "That is true," said the priest "but that is how the guilty speak."

Franz Kafka, The Trial.

Someone must have slandered Josef K., for one morning, without having done anything truly wrong, he was arrested.

Franz Kafka, The Trial.

As confirmed by the United States Department of Justice press release issued November 18, 2020, attached hereto as **Exhibit 1**, entitled "Recology Executive Laundered $1 Million in Bribes,

Often Through An Intermediary Charity, To Former DPW Director":

Paul Frederick Giusti, the former Group Government & Community Relations Manager for Recology's San Francisco Group, has been charged in a federal criminal complaint with bribery and money laundering, announced United States Attorney David L. Anderson, IRS Criminal Investigation Special Agent in Charge Kareem Carter, and Federal Bureau of Investigations Special Agent in Charge Craig D. Fair.

The complaint alleges that Giusti, 64, of San Francisco, engaged in a long-term scheme to defraud the public of its rights to honest services and laundered money in the process. The complaint alleges that Giusti was a central actor in Recology providing Nuru with a continuous stream of money and benefits, ultimately worth over $1 million, to influence Nuru to act in Recology's favor. According to the complaint, among other payments, Giusti agreed to give $20,000 to Mohammed Nuru, then San Francisco's Director of Public Works, to secure Nuru's support for Recology's efforts to implement a price increase on the 'tipping fees' it charged the City to dump materials at a Recology facility.

As part of the scheme, Giusti concealed the bribe as a 'holiday donation' from Recology to the Lefty O'Doul's Foundation for Kids, a non-profit organization for underprivileged children in San Francisco. Nick Bovis, the head of the Foundation, used the money to pay for an annual holiday party organized by Nuru for select DPW employees and other invited guests.

San Francisco Trash Company Executive Charge With Bribing Company's Chief San Francisco Government Regulator: Recology Executive Laundered $1 Million in Bribes, Often Through Intermediary Charity, to Former DPW Director.

With no evidence, two weeks later, Defendant Recology convened an inquisition of six

lawyers, including five outside attorneys and one corporate counsel, to demand responses from the

Jewish Financial Controller of Recology, Adam Tabak. Tabak was ordered to attend the inquisition on December 1, 2020. Having done nothing wrong, but having been part of the company for fifteen years, Tabak was not initially advised that he was not a subject of the investigation. Tabak suffered a psychotic break down, which within one month led to his death. As will be shown through this Complaint, Defendants owed duties to Plaintiff, which they breached, and which ultimately caused the damages herein asserted.

Plaintiffs GABRIELLA TABAK, individually and as Guardian Ad Litem for her three minor children **B.T.** , **A.T.** , and **L.T.** , and as representative of the ESTATE OF ADAM TABAK, deceased ("Plaintiffs"), by and through their attorneys of record, file this Complaint against RECOLOGY, INC. and DOES 1 through 100, inclusive. Plaintiffs hereby allege as set forth below:

## GENERAL ALLEGATIONS

1. This case is about the unnecessary and tragic death of Adam Tabak. Adam was a forty-five-year-old married father of three young children, **B.T.** , **A.T.** , and **L.T.** . At the time of his death, on January 2, 2021, Adam was the controller for defendant RECOLOGY, INC. ("RECOLOGY") Adam worked for the RECOLOGY corporate office. He was a RECOLOGY employee for fifteen (15) years.

2. Defendant RECOLOGY has found itself in the news recently. This complaint cites these facts, not to denigrate the Defendant, but simply to assert a relevant fact. On April 15, 2021, a former RECOLOGY vice president, John Francis Porter, group manager of RECOLOGY's San Francisco Group was charged with money laundering and bribery as part of an alleged attempt to increase San Francisco's dumping fees to the waste management company. Mr. Porter became the second RECOLOGY executive charged with fraud and money laundering. In November of 2020, the United States indicted RECOLOGY executive Paul Frederick Giusti.

3. On March 4, 2021, RECOLOGY, INC. agreed to a $100 million settlement of refunds for trash and recycling overcharges. On that date, San Francisco City Attorney Dennis Herrera announced that RECOLOGY would reimburse ratepayers $94.5 million in overcharges and interest,

as well as lower residential and commercial refuse rates starting on April 1, 2021. SF Gate, March 5, 2021. RECOLOGY would make a $7 million settlement payment to the City under the California Unfair Competition Law and the San Francisco Campaign and Governmental Conduct Code. He said that RECOLOGY would be under a four-year injunction prohibiting the company from making any gift to city employees or non-profits at the behest of city officials. Finally, Mr. Herrera revealed on March 4, 2021 that a joint public integrity review by the City Attorney's Office and the Controller's Office was ongoing, touched off by the arrest of Mohammed Nury, Director of San Francisco Public Works, by the Federal Bureau of Investigations in January 2020. Among the allegations that led to Nuru's arrest, Nuru regularly solicited funds from RECOLOGY for his own benefit and that of city employees. RECOLOGY and its affiliated companies, Sunset Scavenger Company and Golden Gate Disposal & Recycling Company, regularly provided gifts of money, meals, and accommodations to city employees, allegedly to influence decisions affecting RECOLOGY. Adam Tabak worked for the corporate office, not San Francisco office.

4. On information and belief, Gary Chen is an attorney who spearheaded the inquisition, along with a team of Morrison & Forrester lawyers on Adam Tabak, ultimately causing Tabak's death.

5. As it relates to Plaintiffs, the essential facts of this case commence at a meeting called by RECOLOGY's inhouse counsel, Mr. Chen. The meeting, which occurred on December 1, 2020, was attended by RECOLOGY's inhouse counsel, Mr. Chen, and at least four outside counsel from the firm of Morrison & Forrester, and Adam Tabak. The specific words articulated by Defendant's representatives at this meeting were so threatening, hostile, oppressive, and fraudulent that Plaintiff was sent into a psychotic breakdown. At no time during the meeting did any of the lawyers advise Tabak that he was not a target of any investigation. In fact, Chen and outside counsel, through their words, actions, body language, and representations, in essence accused Tabak of criminal or civil or moral wrongdoing. While none of these accusations were true, accusing the Jewish financial controller of improprieties met an ancient anti-Semitic trope. Following the meeting, Mr. Tabak did not eat or sleep for three (3) days. He voluntarily had himself committed to a hospital on a 5150 hold. Ultimately, on January 2, 2021, just one month after that offensive meeting, Plaintiff took his own life by stabbing

himself with a kitchen knife in front of his wife and children. Plaintiff worked for RECOLOGY for fifteen (15) years and was never disciplined, investigated, or questioned during his long tenure. He consistently was given good reviews, raises, and promotions.

6.      The meeting, which will be described herein to the best of Plaintiffs' ability, was one where five (5) figures of authority from RECOLOGY willfully and wrongfully accused Plaintiff of wrongdoing without reasonable basis for the allegation. The alleged wrongdoing of Mr. Tabak asserted at the meeting went beyond his alleged failures to detect fraud and financial improprieties in the company. The false allegations articulated against Adam, without any reasonable basis, were that he himself participated in fraud. This was done without a scintilla of evidence against Mr. Tabak. It was further done in an effect to deflect blame and illegality from senior corporate officials. Deflecting blame to Mr. Tabak, a Jewish financial controller of Defendant's corporation, would play into the ancient anti-Semitic trope. The psychotic break that Mr. Tabak suffered commenced with this outrageous meeting on December 1, 2020. It ceased on January 2, 2021, several hours after Mr. Tabak first stabbed himself, when he ultimately died.

7.      Plaintiffs are informed and believe, and thereon allege, that at all times herein RECOLOGY, INC. and DOES 1 through 100, inclusive, owed fiduciary obligations to its employee, Adam Tabak. Those obligations include, but are not limited to, treating him in good faith and fair dealing and not wrongfully or fraudulently accusing him of wrongdoing.

8.      Plaintiffs are informed and believe, and thereon allege, that at all times herein relevant, RECOLOGY, INC. and DOES 1 through 100, inclusive, conspired and created a fraudulent accusation against Adam Tabak that somehow he was involved in corporate fraud. Such allegations are absolutely false, yet sent Mr. Tabak into a psychotic break in which he ultimately took his own life.

9.      Plaintiffs are informed and believe, and thereon allege, that at all times herein relevant, RECOLOGY, INC. was located in San Francisco, San Francisco County, California.

10.     Plaintiff GABRIELLA TABAK, at all times herein relevant, was a resident of Marin County, California, and is the surviving spouse of the Decedent Adam Tabak ("Decedent").

12. Plaintiff THE ESTATE OF ADAM TABAK is represented by and through its Successor-in-Interest GABRIELLA TABAK pursuant to *Code of Civil Procedure* § 377.60.

13. Plaintiff **B.T.** , at all time herein relevant, was a resident of Marin County California, and is a surviving son of Decedent.

14. Plaintiff **A.T.** , at all times herein relevant, is a resident of Marin County, California, and is a surviving daughter of Decedent.

15. Plaintiff **L.T.** , at all times herein relevant, is a resident of Marin County, California and is a surviving son of the Decedent.

16. Defendant RECOLOGY, INC. ("Defendant"), at all times herein relevant, is a California corporation and is authorized to do business in California, with its office located in San Francisco, California.

17. The true names and capacities, whether individual, plural, corporate, partnership, associate, or otherwise, of DOES through 100, inclusive, are unknown to Plaintiffs who therefore sue said defendants by such fictitious names. The full extent of the facts linking such fictitiously sued defendants is unknown to Plaintiffs. Plaintiffs are informed and believe, and thereupon allege, that each of the defendants designated herein as a DOE was, and is, negligent, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, or in some other actionable manner, legally and proximately caused the hereinafter described injuries and damages to Plaintiffs. Plaintiffs will hereafter seek leave of the Court to amend this Complaint to show the defendants' true names and capacities after the same have been ascertained.

18. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned herein, RECOLOGY, INC. and DOES 1 through 100, inclusive, were agents, servants, employees, successors in interest, partners, and/or joint venturers of their co-defendants, and were, as such, acting within the course, scope, and authority of said agency, employment, and/or venture, and that each and every defendant, as aforesaid, when acting as principal, was negligent in the selection and hiring of each and every other defendant as an agent, servant, employee, successor in interest, and/or joint venturer.

19.     Adam Tabak was Jewish and a member of a protected class.

20.     Following the December 1, 2020 meeting, Adam Tabak had a psychotic breakdown. As such, he was disabled and a member of a protected class.

21.     Defendant RECOLOGY, INC. formerly known as NorCal Waste Systems, is a waste management company with its headquarters in San Francisco. The company collects and processes municipal solid waste. The company also operates transfer stations, material recovery facilities and landfills. RECOLOGY, INC. is the parent to approximately forty (40) operating companies, including Recology San Francisco, Recology Clean Scopes (Seattle), and Recology Portland. According to a 2011 New York Times article, RECOLOGY, INC.:

> "…has a long history in the Bay Area, and holds a no-bid contract for garbage collection in San Francisco. In 1932, the city granted a permanent concession to the city's 97 independent garbage collectors; shortly thereafter those 97 independents banded together to form the company that would become Norcal Waste Systems. Since that time, the company has held a permanent no-bid, no-franchise-fee contract to collect the city's garbage…"

On information and belief, RECOLOGY has contracts with several municipalities, including the federal government.

**ADAM TABAK**

22.     For the forty-five (45) years immediately prior to December 2020, Adam Tabak was an exemplar of a model citizen. He had a strong and healthy marriage to his wife Gabi. He was a great father to three wonderful young children, ages fifteen (15), twelve (12), and eight (8). He lived for his family and he did everything for them. He spent every spare moment with them. For the forty-five years immediately prior to December 2020, Adam had no prior mental health challenges and no mental health diagnosis. He had not even seen a therapist or psychiatrist. He was healthy, stable, level-headed, mellow, and honest. He was employed by RECOLOGY for fifteen years (beginning in 2005) and was the Vice President Director, Controller for the company's corporate headquarters. He was never disciplined, terminated, or accused of any impropriety during his fifteen-year tenure.

23.     On or about December 1, 2020, Adam was ordered to attend a meeting with the RECOLOGY, INC. attorney and five other persons. On information and belief, one of the persons present at the meeting was the forty-year-old Senior Vice President and Chief Legal Officer Cory Chen. On information and belief, there were four or five other persons at the meeting.

24.     During the meeting on December 1, 2020, Defendant used threats, fraud, deceit, menace, and unreasonable duress to intentionally deprive Adam Tabak's freedom of movement. Adam did not voluntarily consent to staying at the meeting. In fact, Tabak physically attempted to leave the meeting; however, due to intentional threats, fraud, deceit, menace and unreasonable duress by Defendant, Adam was not allowed to leave the room. Prior to the meeting, Adam was given no agenda. He did not know what the purpose of the meeting was. He was not given an opportunity to review any document or file prior to the meeting. Even as the meeting commenced, the persons conducting the meeting, including Cory Chen and the four or five others, never advised Adam as to whether he was being investigated for wrongdoing or whether or not the interrogatories were simply attempting to garner information. Instead, during the meeting, the interrogatories made it clear that Adam was to be the scapegoat for the fraudulent and illegal actions at RECOLOGY.

25.     Following the meeting, Adam immediately called his sister, Maxine Nise. Adam told Maxine that he was very scared as a result of the meeting and felt he was pushed into a corner and was being framed for something he did not do. He said he asked multiple times during the meeting to end the meeting and re-convene at a later time so he could collect himself and do his own due diligence to try to answer the pointed and difficult questions he was being asked. The attorneys resisted, did not listen, proceeded with the meeting, and would not let him leave the meeting. He told his sister that the attorneys present at the meeting shamed him, pointed the finger at him, and wanted him (without any warning) to answer detailed questions from years prior that he could not recall off the top of his head (since he was not given any agenda in advance).

26.     Sometime following the meeting, the internal counsel called Adam sharing that he was sorry he did not inform Ada previously that he was not under investigation. By that point, Adam was already frightened, based on the allegations made in the meeting, and did not know what to believe.

He knew there were investigations happening, both internally and externally [by the Federal Bureau of Investigations (FBI)] and did not know how he might be questioned. He was told that everything needed to be confidential and he was not allowed to discuss any questioning/investigation with anyone (both at the company or outside). As a result, he was very concerned about even sharing information with his wife, his sister, or his brother (the only three people with which he shared this).

27.     In the meantime, RECOLOGY was in the news regarding the investigation of a former employee (Paul Giusti), who was charged by the FBI with white collar crimes (bribery and money laundering associated with the Department of Water and Power. Adam was not associated with this individual as Adam was at Headquarters and Mr. Giusti worked for the San Francisco RECOLOGY office. They did have an interaction when they once were in the same group on a community service activity.

28.     From the December 1, 2020 meeting forward, Adam did not sleep or eat for three nights and three days. He was not the same. He was worried. He believed that the company that he had worked for for fifteen years was setting him up as a scapegoat for financial improprieties. Although Adam had done nothing wrong, a psychiatrist later diagnosed the Defendant's treatment of him during that meeting as having caused a psychotic break that ultimately took his life A meeting whereby you are required to attend; whereby you are not given an agenda; whereby you are not advised that you are not a target of an investigation; whereby you are accused of fraud, embezzlement, and money laundering, is not a benefit of the bargain of the workers' compensation system. As noted by the California Supreme Court in *Fermino v. Fedco*, 7 Cal. 4th 701 (1994), the Court expanded an employee's rights to sue his employer for misconduct that falls outside the compensation bargain. Courts have generally limited this exception to employer misconduct that is not a "normal part of the employment relationship" (*Id.* At 715). The specifically enumerated exceptions found in the Labor Code such as false imprisonment, disability discrimination, defamation and wrongful termination in violation of public policy. As confirmed in *Davaris v. Cubaleski* (1993), 12 Cal. App. 4th 1583, defamatory statements made to damage employee's reputation are neither a "normal part of the

employment relationship" nor risk of employment within the exclusivity of the Workers' Compensation Act.

29.     Following the meeting, Adam was extremely concerned by the odd fact that he did not receive any further emails and no further meetings were held to follow up (he did receive invites which would appear and then suddenly get cancelled, which added to Mr. Tabak's concern). He shared with his sister that he even had an interview that seemed very strange that popped up on his calendar out of nowhere. This was not at all typical of Mr. Tabak's workflow during the day and that worried him. Adam was given no support or direction from management following the meeting. He continued to not eat or sleep. As later diagnosed, Adam suffered a psychotic break down as a result of the defamation and false allegations made against him.

30.     Adam was discharged from a 5150 – 72-hour hold from Marin General Hospital on December 7, 2020. Details in that report indicate he was delusional and it was brought on by work. The report also mentioned a potential diagnosis of Delusional Disorder.

31.     As part of his discharge, he agreed to see a psychiatrist/therapist. He was referred to and saw Dr. David May upon his release from the Hospital on December 15, 2020, as that was the doctor's first available appointment. Dr. May also assessed Adam as suffering from Delusional Disorder caused by an external environmental trigger: the December 1 meeting and extreme work stress.

32.     There were no resources made available to Adam by Recology, no support and no one he could reach out to at Recology. He did not feel he could talk to anybody about what he was going through and told his sister, "I can't trust anybody." He did not know whom he could trust at Recology and stated that they offered no guidance or support while there were investigations happening.

33.     Adam also saw his primary care physician Dr. Nadine Aldahhan on Thursday, December 10, 2020 as a follow up from his hospital discharge.

34.     Recology's CFO Cathy Langridge (Adam's boss) texted Adam's wife, Gabrielle Tabak, on Thursday, December 10, 2020 that she wanted to have Adam's Recology laptop and cellphone picked up right way. Gabrielle requested that it wait a day, as they had appointments to go

to that were a priority as a result of Adam's 5150 discharge. Adam's Recology cellphone and laptop were picked up by a service on Friday, December 11, 2020 (four days after his release from a three-day psychiatric hold at the hospital). Cathy also said in the text she wanted someone to talk them through getting access to Adam's iCloud account, despite the fact that Adam had just returned from the hospital for mental health challenges.

35.     Recology picked up Adam's cellphone and laptop with no explanation, even though Gabrielle and Adam asked for an explanation of the sudden urgency and importance while Adam was suffering from paranoia and just released from the 5150 hold at the hospital. This further led Adam to more delusional thinking and paranoia. He grew more and more concerned.

36.     Adam took family medical leave from work beginning on December 7, 2020 and authorized by his primary care physician Dr. Aldahhan on December 17, 2020. At that time, it was estimated he may return to work on January 4, 2021.

37.     On Wednesday, December 23, 2020, and again on Wednesday, December 30, 2020, Adam went on two walks with Miss Langridge in Marin. He met with her with the intention of wanting to hear what she thought he should do regarding returning to work. Knowing the details of his 5150 hospitalization, and the fact that he was on family medical leave, he felt she was the only one he could talk to about possibly returning to work on January 4, 2021. He felt bad about not being with his team.

38.     When his sister Maxine asked About about quitting and not just taking family medical leave, he said he did not want to leave his team behind or not follow through on his commitment to them. He also said he was worried about being followed and framed in the investigations. He felt it would look like he was at fault if he quit and he waws not at fault for anything.

39.     Because he was determined to return to work, his sister Maxine felt (and he agreed) that it was important to have legal counsel of his own. They were referred to a white-collar attorney in San Francisco named Doug Rappaport. Maxine drove Adam to the meeting on December 29, 2020 and walked him into the office where Adam had a twenty-minute consult with the attorney and his associate. When they left the building, Adam was convinced the attorney was with the Federal Bureau of Investigations (FBI). He was still having delusions and was paranoid and consumed with worries

that his phone was tapped and his house would be raided. These were delusions that only commenced following the December 1, 2020 meeting.

40. Adam was not involved in any form of white-collar crime but he felt he was shamed by the attorneys.

42. Dr. May, Adam's therapist, later shared a voicemail Adam left for him on December 31, 2020 in which he requested a session for Sunday, January 3, 2021, as he intended to return to work on January 4, 2021. He wanted to meet with Dr. May the day before so that he could return to work with a clear head.

43. On Friday, January 1, 2021, Adam received an email from his boss, Miss Langridge, requesting Adam to send over attachments or images of Recology lease agreements for their California Street location. It was inappropriate for her to be asking Adam to do any work while he was on family medical leave and in condition to be working. Adam and his family never received any explanation of why Adam's phone and laptop were taken away so swiftly after he had just returned from the hospital and was on family medical leave. These actions by Recology drove him to further paranoia and delusions.

44. On Saturday, January 2, 2021, Adam brutally stabbed himself to death in front of his wife and children in the family home. The cause of death was suicide, brought on by a psychotic break due to the December 1, 2020 meeting. Adam did not die immediately. He lingered in pain before his wife and children.

## **FIRST CAUSE OF ACTION**

### **Wrongful Death and Survival Action Sounding in Negligence**

45. Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

46. Adam Tabak was placed under unreasonable mental and physical distress by Defendant and died on January 2, 2021.

47. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant owed a duty of care to all reasonably foreseeable people, including Decedent Adam

Tabak and Plaintiffs, to plan, organize, and execute the December 1, 2020 meeting in a reasonably safe manner.

48. Plaintiffs are informed and believe, and thereon allege, that Defendant's said careless, negligent, reckless and unlawful conduct, including but not limited to falsely accusing Tabak of committing a crime, on and around December 1, 2020, was the direct, legal and proximate cause of the fatal injuries sustained by Decedent Adam Tabak and the damages to Plaintiffs as herein alleged.

49. The aforementioned subject incident giving rise to this wrongful death and survival action caused Decedent Adam Tabak to suffer various traumatic injuries. As a legal, direct and proximate result of the conduct of said Defendants, Decedent Adam Tabak suffered pre-death physical injuries, mental anguish, terror, anxiety and unconsciousness.

50. Plaintiffs are further informed and believe, and thereon allege, that Defendant was assisting, facilitating, encouraging and otherwise condoning all attendants at the December 1, 2020 meeting intentional, negligent and reckless conduct and as such is therefore liable for their negligent and reckless behavior.

51. Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant Recology, Inc. and Does 1 through 100, inclusive, carelessly, negligently, recklessly and with conscious disregard for the welfare and safety of others, including Decedent Adam Tabak, organized and executed the December 1, 2020 meeting so as to legally and proximately cause the death of Adam Tabak.

52. As a legal, direct and proximate result of the reckless and negligent conduct of Defendant Recology, Inc. and Does 1 through 100, inclusive, Plaintiffs have sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support and counseling, companionship, solace and mental support, as well as other benefits and assistance of Decedent Adam Tabak, all to their general damages in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

53.     As a legal, direct and proximate result of the conduct of Defendant Recology and Does 1 through 100, inclusive, Plaintiffs will be deprived of the financial support and assistance of Decedent Adam Tabak, the exact amount of such losses to be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

## SECOND CAUSE OF ACTION

### Negligent Hire, Supervision, Retention

54.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

55.     Plaintiffs are informed and believe, and thereupon allege, that at all times herein relevant, Recology, Inc. hired, retained, supervised, trained and scheduled the other participants in the December 1, 2020 meeting.

56.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant Recology, Inc. and Does 1 through 100, inclusive, were negligent by failing to provide any or sufficient training or supervision to any person participating in the December 1, 2020 meeting.

57.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendants and Does 1 through 100, inclusive, owed a duty of care to the public, including Decedent Adam Tabak and Plaintiffs, in the hiring, retention, supervision and training of their agents, employees, servants, and/or independent contractors, which they assigned to the December 1, 2020 meeting.

58.     Plaintiffs are informed and believe, and thereon allege, that at all times mentioned herein, Defendant and Does 1 through 100, inclusive, breached that duty by failing to act reasonably in the hiring, retention, supervision and training of their agents, employees, servants and/or independent contractors, attorneys or others attending the December 1, 2020 meeting. Defendants hired other employees and agents that were present in the meeting when Defendant knew or should have known that said employees and agents were incompetent and unfit to perform their jobs.

59.     Plaintiffs are informed and believe, and thereon allege, that the aforementioned negligent hiring, retention, supervision and training of those that attended the December 1, 2020 meeting of Defendants and Does 1 through 100, inclusive, directly, legally and proximately caused or was a substantial factor in causing Adam Tabak's death on January 2, 2021.

60.     As a legal, direct and proximate result of the reckless and negligent conduct of Defendants and Does 1 through 100, inclusive, Plaintiffs have sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support and counseling, companionship, solace and mental support, as well as other benefits and assistance of Decedent Adam Tabak, all to their general damages in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

61.     As legal, direct and proximate result of the conduct of Defendants and Does 1 through 100, inclusive, Plaintiffs will be deprived of the financial support and assistance of Decedent Tabak, the exact amount of such losses to be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

## THIRD CAUSE OF ACTION

### False Imprisonment

62.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

63.     Defendant used threats, fraud, the threat of force, menace, deceit, and unreasonable duress to intentionally deprive Decedent Adam Tabak's freedom of movement.

64.     Decedent Tabak did not consent to continued participation in the December 1, 2020 meeting, and tried to physically leave. Decedent Adam Tabak physically attempted to leave the meeting; however, due to intentional threats, fraud, deceit, menace, and unreasonable duress by Defendant, Adam was not allowed to leave the room. Due to coercion, Tabak was compelled to stay for an approvable time.

65. Defendant's conduct was a substantial factor in Adam Tabak's damages, including mental anguish, fear, psychological injuries, and aforementioned mental distress and anguish resulting in suicide.

## FOURTH CAUSE OF ACTION

### Intentionally False/Reckless Misrepresentation

66. Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

67. Defendant Recology represented to Adam Tabak that he (Tabak) was involved in numerous fraudulent and illegal transactions while employed at Recology.

68. Recology knew those representations were false.

69. Recology made the representations recklessly and without regard for the truth.

70. Recology wanted Mr. Tabak to rely on the misrepresentations.

71. Mr. Tabak was harmed.

72. Recology's false misrepresentation was a substantial factor in causing Adam Tabak's harm.

## FIFTH CAUSE OF ACTION

### Deceit

73. Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

74. Defendant Recology, Inc. made misrepresentations to Decedent Adam Tabak.

75. Defendant knew that the representations made to Mr. Tabak were not true.

76. Defendant Recology, Inc. intended that Mr. Tabak would take some action in reliance upon Defendant's misrepresentations.

77. Decedent did justifiably rely on Defendant's misrepresentations, and Decedent's reliance directly, legally and proximately caused or was a substantial factor in causing Decedent's death on January 2, 2021.

78. As a legal, direct and proximate result of Defendant's deceit, Plaintiffs have sustained damages resulting from the loss of love, affection, society, service, comfort, support, right of support, expectations of future support and counseling, companionship, solace and mental support, as well as other benefits and assistance of Decedent Adam Tabak, all to their general damages in a sum in excess of the jurisdictional limits of this Court, which will be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

79. As legal, direct and proximate result of the conduct of Defendants, Plaintiffs will be deprived of the financial support and assistance of Decedent Tabak, the exact amount of such losses to be stated according to proof, pursuant to Section 425.10 of the *California Code of Civil Procedure*.

## SIXTH CAUSE OF ACTION

### Violation of Cal. Gov. Code § 12940

86. Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

87. On or about August 16, 2021, Plaintiff filed a timely charge of discrimination against Recology, Inc. with the California Department of Fair Employment and Housing ("DFEH").

88. On or about August 19, 2021, the DFEH issued Plaintiff a notice of right-to-sue in connection with this charge.

89. Plaintiff has exhausted administrative remedies available to him.

90. During the course of his employment with Recology, Inc., Plaintiff suffered from a serious mental disability and mental condition brought on by the December 1, 2020 meeting.

91. Defendant knew that Plaintiff had a mental disability and medical condition.

92. Plaintiff was able to perform the essential job duties with reasonable accommodation for his disability and mental condition. At all times during his employment, Plaintiff was otherwise qualified to do his job.

93. Defendant failed to accommodate Plaintiff's condition and failed to engage in an interactive process to determine how to accommodate his condition.

94.     Plaintiff suffered a psychotic break because Defendants failed to accommodate his condition and engage in an interactive process to determine how to accommodate his condition.

95.     As a result of Defendants' conduct, Plaintiff has suffered damages, including economic losses and emotional distress, in an amount to be determined at trial.

96.     Defendants' actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure Plaintiff and in conscious disregard for Plaintiff's rights.

## SEVENTH CAUSE OF ACTION

### Violation of Cal. Gov. Code § 12940(m)

97.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

98.     During the course of his employment with Recology, Inc. ("Recology"), Plaintiff suffered from a serious mental disability and medical condition that requires ongoing treatment and limits major life activities.

99.     Recology knew that Plaintiff had a mental disability and medical condition.

100.    Plaintiff was able to perform the essential job duties with reasonable accommodation for his physical disability and medical condition. At all times during his employment, Plaintiff was otherwise qualified to do his job.

101.    Recology failed to reasonably accommodate Plaintiff.

102.    As a result of Recology's conduct, Plaintiff has suffered damages, including economic losses and emotional distress, in an amount to be determined at trial.

103.    Recology's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure the Plaintiff and in conscious disregard of Plaintiff's rights.

## EIGHTH CAUSE OF ACTION

### Failure to Engage in the Interactive Process

104.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

105.     During the course of his employment with Recology, Plaintiff suffered from a serious mental disability and medical condition that requires ongoing treatment and limits major life activities.

106.     Recology knew that Plaintiff had a mental disability and medical condition.

107.     Plaintiff was able to perform the essential job duties with reasonable accommodation for his mental disability and medical condition. At all times during his employment, Plaintiff was otherwise qualified to do his job.

108.     Plaintiff attempted to obtain reasonable accommodations. Plaintiff was willing to participate in the interactive process to determine reasonable accommodation.

109.     Recology failed to engage in a timely good-faith interactive process with Plaintiff to determine an effective reasonable accommodation.

110.     As a result of Recology's conduct, Plaintiff has suffered damages, including economic losses and emotional distress, in an amount to be proven at trial.

111.     Recology's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure the Plaintiff and in conscious disregard of Plaintiff's rights.

## NINTH CAUSE OF ACTION

### Disability Discrimination

112.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

113.     Plaintiff had a mental impairment that substantially limited one or more of his major life activities.

114.     Plaintiff was able to safely perform the essential job duties with reasonable accommodation for his mental disability and medical condition. At all times during his employment, Plaintiff was otherwise qualified to do his job. Recology denied Plaintiff such accommodation.

115.     Recology did not address or grant Plaintiff's requests for accommodation. Despite Recology's knowledge of Plaintiff's mental impairment, Recology failed to engage in an interactive process to determine how to accommodate his condition.

116.     Adam was constructively discharged and forced to resign from Recology because Defendants failed to accommodate his condition and engage in an interactive process to determine how to accommodate his condition.

117.     As a result of Defendants' conduct, Plaintiff has suffered damages, including economic losses and emotional distress, in an amount to be determined at trial.

118.     Recology's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure the Plaintiff and in conscious disregard of Plaintiff's rights.

## TENTH CAUSE OF ACTION

### Termination in Violation of Public Policy

119.     Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

120.     During the course of his employment with Recology, Plaintiff suffered from a serious mental disability and medical condition that requires ongoing treatment and limits major life activities.

121.     Recology knew that Plaintiff had a mental disability and medical condition.

122.     Plaintiff was able to perform the essential job duties with reasonable accommodation for his mental disability and medical condition. At all times during his employment, Plaintiff was otherwise qualified to do his job.

123.     Recology did not address or grant Adam's requests for accommodation. Despite Recology's knowledge of Adam's mental impairment, Recology failed to engage in an interactive process to determine how to accommodate his condition.

124.     Adam was constructively discharged and forced to resign from Recology because Defendants failed to accommodate his condition and engage in an interactive process to determine how to accommodate his condition.

125.     By engaging in the conduct set forth above, Recology violated the public policy of the State of California.

126. As a result of Defendants' conduct, Plaintiff has suffered damages, including economic losses and emotional distress, in an amount to be determined at trial.

127. Recology's actions were willful, malicious, fraudulent and oppressive, and were committed with the wrongful intent to injure the Plaintiff and in conscious disregard of Plaintiff's rights.

## ELEVENTH CAUSE OF ACTION

### Violation of Family Medical Leave Act

128. Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

129. The Family Medical Leave Act ("FMLA") provides that an employer must reinstate an eligible employee on an approved FMLA leave to said employee's same position, or to an equivalent position, upon the termination of said employee's leave.

130. Defendants were and are a covered employer under the FMLA, 29 U.S.C. § 2611(4)(A). At all times herein relevant, Plaintiff was an eligible employee on an approved FMLA leave for a serious health condition under 29 U.S.C. § 2611(2)(A), and 29 U.S.C. § 2612(a)(1)(A),(D).

131. Defendants violated the FMLA by, *inter alia*, refusing to reinstate Plaintiff to his prior position or an equivalent position, and by terminating his employment the day before he was to return to work.

132. As a direct and proximate result of these Defendants' conduct, Plaintiff has suffered special damages in an amount equal to 12 weeks of wages or salary under 29 U.S.C. § 2617(a)(1)(A)(i). Plaintiff is also entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii) as Defendants did not act in good faith and had no reasonable grounds for believing they were not violating the FMLA. Plaintiff is entitled to appropriate equitable relief, including employment, reinstatement and promotion under 29 U.S.C. § 2617(a)(1)(B).

133. Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 2617(a)(1)(A)(3).

## TWELFTH CAUSE OF ACTION

### Violation of the California Family Rights Act

134.  Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

135.  The CFRA provides that an employer must provide an eligible employee with up to 12 work weeks of leave for a serious health condition, which includes a mental condition which requires inpatient care or incapacity from work. Plaintiff was an eligible employee under the CFRA.

136.  Defendants interfered with Decedent's rights under the CFRA by, *inter alia*, contacting Decedent during Decedent's period of approved leave with work requests, forcing him to continue working.

137.  As a direct and proximate result of Defendants' conduct, Plaintiff has suffered special damages in the form of lost earnings, benefits and/or out-of-pocket expenses in an amount according to proof at the time of trial. As a direct and proximate result of Defendants' conduct, Plaintiff will suffer additional special damages in the form of lost future earnings, benefits and/or other prospective damages in an amount according to proof at the time of trial.

138.  As a further direct and proximate result of Defendants' conduct, Plaintiff has suffered mental and emotional pain, distress and discomfort, all to her detriment and damage in amounts not fully ascertained but within the jurisdiction of this court and subject to proof at the time of trial.

139.  In engaging in the conduct alleged herein, Defendants acted oppressively, maliciously, fraudulently and/or outrageously toward Plaintiff, with conscious disregard for his known rights and with the intention of causing, and/or willfully disregarding the probability of causing, unjust and cruel hardship to Plaintiff. In so acting, Defendants intended to and did vex, injure and annoy Plaintiff. Therefore, an assessment of punitive damages should be made against Defendants in an amount sufficient to punish them and to prevent them from willfully engaging in future unlawful conduct.

140.  Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to California Government Code § 12965(b).

## THIRTEENTH CAUSE OF ACTION

### Violation of the Family Medical Leave Act

141.    Plaintiffs re-allege and incorporate herein by reference each and every allegation and statement contained in the prior paragraphs.

142.    The FMLA provides that an employer must provide an eligible employee with up to 12 work weeks of leave for a serious health condition, which includes a mental condition which requires inpatient care or incapacity from work. Plaintiff was an eligible employee under the FMLA.

143.    Defendants interfered with Plaintiff's rights under the FMLA by, *inter alia*, contacting Decedent during Decedent's period of approved leave with work requests, forcing him to continue working.

144.    As a direct and proximate result of these Defendants' conduct, Plaintiff has suffered special damages in an amount equal to 12 weeks of wages or salary under 29 U.S.C. § 2617(a)(1)(A)(i). Plaintiff is also entitled to liquidated damages under 29 U.S.C. § 2617(a)(1)(A)(iii) as Defendants did not act in good faith and had no reasonable grounds for believing they were not violating the FMLA. Plaintiff is entitled to appropriate equitable relief, including employment, reinstatement and promotion under 29 U.S.C. § 2617(a)(1)(B).

145.    Finally, Plaintiff is entitled to costs and reasonable attorneys' fees pursuant to 29 U.S.C. § 2617(a)(1)(A)(3).

### JURY DEMAND

146.    Plaintiffs demand a trial by jury.

### PRAYER FOR RELIEF

147.    For general damages according to proof on each cause of action for which such damages are available;

148.    For special damages, according to proof on each cause of action for which such damages are available;

149.    For compensatory damages, according to proof on each cause of action for which such damages are available;

150. For punitive damages, according to proof on each cause of action for which such damages are available;

151. For prejudgment and post-judgment interest, according to law;

152. For reasonable attorneys' fees incurred in this action on those causes of action for which such fees are recoverable under the law;

153. For costs of suit incurred in this action; and

154. For such other and further relief as the Court deems proper and just.

DATED: August 20, 2021          **SIEGAL & RICHARDSON, LLP**

Joel H. Siegal
Attorney for Plaintiffs

# EXHIBIT 1

United States Department of Justice

THE UNITED STATES ATTORNEY'S OFFICE

NORTHERN DISTRICT *of* CALIFORNIA

U.S. Attorneys » Northern District of California » News

**Department of Justice**

U.S. Attorney's Office

Northern District of California

FOR IMMEDIATE RELEASE                    Wednesday, November 18, 2020

# San Francisco Trash Company Executive Charged With Bribing Company's Chief San Francisco Government Regulator

### Recology Executive Laundered $1 Million in Bribes, Often Through An Intermediary Charity, To Former DPW Director

SAN FRANCISCO - Paul Fredrick Giusti, the former Group Government & Community Relations Manager for Recology's San Francisco Group, has been charged in a federal criminal complaint with bribery and money laundering, announced United States Attorney David L. Anderson, IRS Criminal Investigation Special Agent in Charge Kareem Carter, and Federal Bureau of Investigation Special Agent in Charge Craig D. Fair.

The complaint alleges that Giusti, 64, of San Francisco, engaged in a long-term scheme to defraud the public of its rights to honest services and laundered money in the process. The complaint alleges that Giusti was a central actor in Recology providing Mohammed Nuru, then San Francisco's Director of Public Works, with a continuous stream of money and benefits, ultimately worth over $1 million, to influence Nuru to act in Recology's favor. According to the complaint, among other payments, Giusti agreed to give $20,000 to Nuru to secure his support for Recology's efforts to implement a price increase on the "tipping fees" it charged the City to dump materials at a Recology facility. As part of the scheme, Giusti concealed the bribe as a "holiday donation" from Recology to the Lefty O'Doul's Foundation for Kids, a non-profit organization for underprivileged children in San Francisco. Nick Bovis, the head of the Foundation, used the money to pay for an annual holiday party organized by Nuru for select DPW employees and other invited guests. The payment was one of several over the years intended to influence Nuru with respect to official actions important to Recology.

"Today's complaint alleges that Paul Giusti bribed Mohammed Nuru with more than $1 million of party funds and other benefits," said U.S. Attorney David L. Anderson. "These bribes were laundered through non-profit organizations to disguise their source and to create the false appearance of a legitimate charitable intent. In return for these bribes, Nuru helped Recology obtain garbage fee increases approved by the City but paid by an unsuspecting public. As our investigation continues, each charge sheds new light on the ways and means of City Hall corruption."

"Following the money is key in a case like this," said Kareem Carter, Special Agent in Charge IRS Criminal Investigation. "The defendant used non-profit organizations to layer complex financial transactions in an attempt to conceal the payments to a city official. IRS CI will continue to work with our law enforcement

partners to ensure that any individual or company involved in this scheme shall be held accountable for their actions and not go unpunished."

"The FBI takes seriously any actions of individuals who seek to improperly influence public officials at the expense of the rate-paying public, and will hold accountable those who attempt to gain an unfair advantage in the public contracting process," said Craig D. Fair, FBI Special Agent in Charge.

According to the complaint, Giusti disguised several Recology payments as charitable donations. Part of the alleged scheme involved Giusti arranging for Recology to "donate" to the Lefty O'Doul's Foundation for Kids from 2016 to 2019, money which was used at Nuru's direction to pay for DPW holiday parties. Another part of the scheme involved Giusti, also at Nuru's direction, arranging for Recology to provide approximately $1 million in regular payments over several years to a local non-profit organization. This non-profit immediately funneled the payments to a second non-profit organization, and those funds were then controlled and used by Nuru. In yet another part of the scheme, Giusti arranged a job for Nuru's son at Recology and, once that benefit was discovered, terminated him and promptly secured for him a Recology-funded internship at yet another non-profit, paid for by a grant for a summer youth internship program. Finally, the complaint alleges Giusti arranged for Recology to secretly pay for the funeral of a DPW employee by having a non-profit pay the mortuary bill and creating a fake donation invoice. The complaint outlines that Giusti timed several "donations" and other benefits to coordinate with key decision points in Recology's requests for assistance and approvals from DPW, particularly Recology's successful 2017 application to increase rates to San Francisco residents for garbage service.

The charges contained in the criminal complaint are mere allegations. As in any criminal case, the defendant is presumed innocent unless and until proven guilty in a court of law.

Giusti is charged with one count of bribery, in violation of 18 U.S.C. § 666(a)(2), and one count of laundering the proceeds of honest services fraud, in violation of 18 U.S.C. § 1956(a)(1)(B)(i). If convicted of bribery, he faces a maximum penalty of 10 years in prison and a fine of $250,000. If convicted of concealment money laundering, he faces a maximum penalty of 20 years in prison, a fine of $500,000 or twice the value of the property involved in the transaction, or both. However, any sentence following conviction would be imposed by the court only after consideration of the U.S. Sentencing Guidelines and the federal statute governing imposition of a sentence, 18 U.S.C. § 3553.

Giusti is expected to be scheduled to make his initial appearance in federal court in San Francisco on November 23, 2020 before U.S. Magistrate Judge Jacqueline Scott Corley.

The case is being prosecuted by the Corporate Fraud Strike Force of the U.S. Attorney's Office. The case is being investigated by IRS Criminal Investigation and the FBI.

---

**Attachment(s):**
Download giusti_complaint.pdf

**Topic(s):**
Financial Fraud

**Component(s):**
USAO - California, Northern

Updated July 23, 2021

Siegal & Richardson, LLP
The Historic Central Building
436-14th Street, Suite 1106
Oakland, Ca. 94612

Siegal & Richardson, LLP
The Historic Central Building
436-14th Street, Suite 1106
Oakland, Ca. 94612

stamps
$0.53 0
US POSTAGE
FIRST-CLASS
062S0009565003
FROM 94612
stamps

Siegal & Richardson, LLP
The Historic Central Building
436-14th Street, Suite 1106
Oakland, Ca. 94612



$0.53
US POSTAGE
FIRST-CLASS
062S0009565021
FROM 94612

$0.53
US POSTAGE
FIRST-CLASS
062S0009564998
FROM 94612

$0.53
US POSTAGE
FIRST-CLASS
062S0009564998
FROM 94612

$0.53
US POSTAGE
FIRST-CLASS
062S0009564998
FROM 94612

THU 30 SEP 2021  PM

Cary Chen — Recology
Executive Vice President
Chief Legal Officer
50 California Street, 24th Floor
San Francisco, Ca. 94111

# EXHIBIT  D

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: 117044 | FOR COURT USE ONLY |
|---|---|---|

NAME: Joel Siegal
FIRM NAME: Siegal Richardson
STREET ADDRESS: 436- 14th Street, Suite 1106
CITY: Oakland, Ca.　　STATE:　　ZIP CODE: 94612
TELEPHONE NO.: 510-271-6720　　FAX NO.:
E-MAIL ADDRESS: joelsiegal@yahoo.com
ATTORNEY FOR (Name): Plaintiffs

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

Plaintiff/Petitioner:
Defendant/Respondent:

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CGC 21- 594 674 |
|---|---|

TO *(insert name of party being served):* Recology inc.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt here.

Date of mailing: September 29, 2021

Joel Siegal

(TYPE OR PRINT NAME)

▶ (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. [ x ] A copy of the summons and of the complaint.
2. [  ] Other *(specify):*

*(To be completed by recipient):*

Date this form is signed: 10-22-2021

Lindbergh Porter - Recology, Inc.

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
*www.courtinfo.ca.gov*

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ] [ Save this form ] [ Clear this form ]

1  Lindbergh Porter, Jr., Bar No. 100091
   lporter@littler.com
2  LITTLER MENDELSON P.C.
   333 Bush Street
3  34th Floor
   San Francisco, California 94104
4  Telephone:    415.433.1940
   Fax No.:      415.399.8490
5

6  Attorneys for Defendant
   RECOLOGY, INC.

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10                   (UNLIMITED CIVIL JURISDICTION)

11

12  GABRIELLA TABAK, individually and as       Case No. CGC-21-594674
    Guardian Ad Litem for minors **B.T.**
13  , **A.T.**     , and **L.T.**             **PROOF OF SERVICE**
    ; THE ESTATE OF ADAM TABAK,
14  DECEASED,

15                 Plaintiff,                  Complaint filed:    August 20, 2021

16        v.

17  RECOLOGY, INC.; and DOES 1 TO 100,
    inclusive,
18

19                 Defendant.

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

**PROOF OF SERVICE**

I am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 333 Bush Street, 34th Floor, San Francisco, California 94104. On October 22, 2021, I served the within document(s):

**ACKNOWLEDGMENT OF RECEIPT**

☐     **By personal service.** I personally delivered the documents to the persons at the addresses listed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office, between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and six in the evening.

☐     **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses below and *(specify one)*:

     ☐   deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

     ☐   placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at*:* **San Francisco, California**.

☐     **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

☐     **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

LITTLER MENDELSON P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

1    ☐      **By fax transmission.**  Based on an agreement of the parties to accept service by fax
2           transmission, I faxed the documents to the persons at the fax numbers listed below.
            No error was reported by the fax machine that I used. A copy of the record of the
3           fax transmission, which I printed out, is attached.

4    ☒      **By electronic service**  Based on a court order or an agreement of the parties to
            accept electronic service, I caused the documents to be sent to the persons at the
5           electronic service addresses listed below via email:

6           JOEL H. SIEGAL
            RICHARD L. RICHARDSON
7           **SIEGAL** & **RICHARDSON, LLP**
            436 14th Street, Suite 1106
8           Oakland, California 94612
            Telephone: (510) 271-6720
9           Facsimile:  (510) 500-9512
            Email: joelsiegal@yahoo.com
10                    richard@rrichardsonlaw.com

11

12          I declare under penalty of perjury under the laws of the State of California that the
     above is true and correct.  Executed on October 22, 2021, at Oakland, California.
13

14
                                        *Cathy Grandison*
15                                       Cathy Grandison

16

17
     4876-2871-1936.1 / 016440-2761
18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON P.C.
333 Bush Street
34th Floor
San Francisco, CA  94104
415.433.1940

# EXHIBIT  E

1   LINDBERGH PORTER, Bar No. 100091
    lporter@littler.com
2   ROBERT M. GEIGER, Bar No. 322914
    rgeiger@littler.com
3   LITTLER MENDELSON, P.C.
    333 Bush Street, 34th Floor
4   San Francisco, CA 94104
    Telephone: 415.433.1940
5   Facsimile: 415.399.8490

6   Attorneys for Defendant
    RECOLOGY, INC.

7

8                   SUPERIOR COURT OF CALIFORNIA

9                      COUNTY OF SAN FRANCISCO

10

11
    GABRIELLA TABAK, individually and as      Case No. CGC-21-594674
12  Guardian Ad Litem for minors **B.T.**
    , **A.T.**        , and **L.T.**          **DEFENDANT'S ANSWER TO PLAINTIFFS'**
13  ; THE ESTATE OF ADAM                      **COMPLAINT**
    TABAK, DECEASED,
14
                    Plaintiffs,
15
    v.
16
    RECOLOGY, INC.; and DOES 1 TO 100,
17  inclusive,                                Complaint Filed: 08/20/2021

18                  Defendant.

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT

Defendant RECOLOGY, INC. ("Defendant") answers Plaintiffs GABRIELLA TABAK, individually and as Guardian Ad Litem for minors **B.T.**, **A.T.**, and **L.T.**; and THE ESTATE OF ADAM TABAK, DECEASED (Adam Tabak referred to as "Decedent") (collectively "Plaintiffs") as follows.

## GENERAL DENIAL

Pursuant to section 431.30(d) of the California Code of Civil Procedure, Defendant denies generally and specifically each and every allegation contained in the Complaint. Defendant further denies Plaintiffs have sustained, or will sustain any loss or damage in the manner or amount alleged, or otherwise, by reason of any act or omission, or any other conduct or absence thereof on the part of Defendant or on the part of Defendant's agents, representatives or employees.

## AFFIRMATIVE DEFENSES

In further answer to the Complaint, Defendant asserts the following additional defenses, which it designates as "affirmative defenses." In asserting these defenses, Defendant does not admit any of the allegations of the Complaint and does not assume the burden of proof as to any matter that, as a matter of law, is Plaintiffs' burden to prove. Defendant intends to rely upon any additional defenses that become available or apparent during pretrial proceedings and discovery in this action and hereby reserves the right to amend this Answer to assert all such further defenses.

## FIRST AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that the Complaint, and each cause of action alleged therein, fails to state facts sufficient to constitute a cause of action upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges on information and belief that Plaintiffs' Complaint and each cause of action alleged therein, or some of them, are barred, in whole or in part, because there exists and arbitration agreement between Decedent and Defendant in which the parties agreed to submit any and all claims arising under the arbitration agreements to final and binding arbitration and thus each and every cause of action alleged in the Complaint is subject to final and binding arbitration in accordance with the terms of the arbitration agreement. Such claims

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

are further barred due to the failure or refusal of Plaintiffs to timely and completely utilize the complaint procedure established by the arbitration agreement, including but not limited to the applicable arbitration procedures, which were at all times available and applicable to Plaintiffs. Defendant does not waive its right to enforce the arbitration agreement.

### THIRD AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that to the extent Decedent's alleged injuries arose in the course of employment, Plaintiffs' claims are barred by the exclusivity of the California Workers' Compensation Act, California Labor Code section 3600, et seq.

### FOURTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that the Complaint, and each cause of action alleged therein, are barred to the extent that they were filed after the expiration of the applicable statutory periods, including but not limited to the limitations periods set forth in California Code of Civil Procedure section 335.1, California Government Code sections 12960 and 12965, and 29 U.S.C. § 2617(c).

### FIFTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that the Complaint, and each cause of action alleged therein, are barred to the extent that Plaintiffs failed to timely comply with the applicable procedural and administrative prerequisites including timely charge filing requirements and the exhaustion of all administrative remedies available to them.

### SIXTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that it exercised reasonable care to prevent and promptly correct any alleged discriminatory or otherwise unlawful behavior.

### SEVENTH AFFIRMATIVE DEFENSE

As a separate and affirmative defense, Defendant alleges that it had no knowledge of any discriminatory or otherwise unlawful behavior by any of its employees, agents, or representatives.

### EIGHTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that to the extent any

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

employee engaged in any discriminatory or otherwise unlawful behavior, the alleged acts were committed outside the course and scope of employment and were not authorized, adopted, or ratified by Defendant and/or Defendant did not know nor should it have known of such conduct.

## NINTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that the employment actions complained of by Plaintiffs were based on legitimate, non-discriminatory reasons.

## TENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that with respect to the employment actions complained of by Plaintiffs, Defendant would have taken the same employment actions in the absence of the alleged discriminatory factor.

## ELEVENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that Plaintiffs' claims, in whole or in part, are barred, or any recovery should be reduced, pursuant to the avoidable consequences doctrine.

## TWELFTH AFFIRMATIVE DEFENSE

Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal and, on that basis alleges to the extent that the Court may find that Decedent did not have a disability that limited a major life activity and that Defendant had an obligation to reasonably accommodate such a disability, Decedent, even with reasonable accommodations, was unable to perform an essential job duty without endangering Decedent's health or safety or the health or safety of others.

## THIRTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that assuming that Decedent made a request for reasonable accommodation, Decedent's requested accommodation imposes an undue hardship.

## FOURTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal and, on that basis alleges that

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

Plaintiff failed to provide sufficient notice that Plaintiff sought qualifying leave under the California Family Rights Act and Family Medical Leave Act.

### FIFTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that Defendant's acts were made in good faith and had reasonable ground for believing such acts were in compliance with the Family Medical Leave Act, and therefore, liquidated damages are not appropriate.

### SIXTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal and, on that basis alleges, that the Complaint and each cause of action set forth therein, or some of them, cannot be maintained against Defendant because Plaintiffs failed to allege the requisite causal connection between alleged protected status or activities and the alleged adverse employment action(s).

### SEVENTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal and, on that basis alleges, that Defendant's conduct towards Plaintiff was fully justified based upon its judgment of differences in individual performance, qualifications, skill, effort, responsibility, merit or other *bona fide* occupational qualifications, business necessity (including undue hardship), by job relatedness, by non-discrimination or affirmative action plans and/or by requirement of law.

### EIGHTEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that to the extent that during the course of this litigation it acquires any evidence of Plaintiffs' or Decedent's wrongdoing, such after-acquired evidence bars Plaintiffs' claims of liability or damages or reduces such claims as provided by law.

### NINETEENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that the injuries and damages alleged in the Complaint were caused by and/or were contributed to by Decedent's own acts or failure to act and that Plaintiffs' recovery, if any, should be reduced by an amount proportionate to

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

the amount by which said acts caused or contributed to said alleged injuries or damages.

## TWENTIETH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant is informed and believes that a reasonable opportunity for investigation and discovery will reveal and, on that basis alleges, Plaintiffs' recovery, if any, of non-economic damages based upon the Complaint is limited to the percentage of fault, if any, attributable to Defendant as provided in the Fair Responsibility Act of 1986, Civil Code sections 1431-1431.5.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that Plaintiffs' claims are barred and/or any recovery to which Plaintiffs might be entitled (and Defendant does not admit that Plaintiffs are entitled to any recovery) must be reduced by reason of Plaintiffs' and Decedent's failure to mitigate their damages.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that any recovery to which Plaintiffs might be entitled (and Defendant does not admit that Plaintiffs are entitled to any recovery) must be offset by any benefits and/or other monies that Plaintiffs have received or will receive from any source, including but not limited to other insurance, state or federal disability payments, and workers' compensation payments.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that all or portions of the Plaintiffs' claims are barred by the defense of waiver and/or release, or accord and satisfaction.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that the Complaint, and each cause of action alleged therein, or some of them, are barred by the doctrines of unclean hands, estoppel, waiver, and laches.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that some or all of Plaintiffs' claims are barred, in whole or in part, on the grounds of res judicata, issue preclusion, or

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

6.

judicial estoppel.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that some or all of Plaintiffs' claims are barred, in whole or in part, on the grounds that Defendant did not cause Decedent's death or otherwise cause him injury.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that some or all of Plaintiffs' claims are barred, in whole or in part, on the grounds of comparative negligence.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that some or all of Plaintiffs' claims are barred, in whole or in part, on the grounds that a third party who is not an agent of Defendant caused Plaintiffs' harm, if any.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that some or all of Plaintiffs' claims are barred, in whole or in part, on the grounds of consent wherein Decedent either expressly or implicitly consented to Defendant's conduct alleged in the Complaint.

## THIRTIETH AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that some or all of Plaintiffs' claims are barred, in whole or in part, on the grounds that any misrepresentation (which Defendant denies) was neither willfully made nor fraudulent and was justified based on Defendant's knowledge at the time it was made. *Graham v. Ellmore*, 135 Cal.App.4th 129, 133 (1933).

## THIRTY-FIRST AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that the United States and/or California Constitutions bar any claim by Plaintiffs for punitive damages.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

As a separate and distinct affirmative defense, Defendant alleges that Plaintiffs' claim for punitive damages is barred because Defendant had suitable anti-discrimination policies in effect at all material times. *Kolstad v. ADA*, 527 U.S. 526 (1999); *White v. Ultramar, Inc.*, 21 Cal. 4th 563

7.

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

(1999).

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant prays that:

1.      Plaintiffs' Complaint be dismissed in its entirety with prejudice;

2.      Plaintiffs take nothing by this action;

3.      Judgment be entered in Defendant's favor and against Plaintiffs;

4.      Defendant be awarded its costs and attorneys' fees incurred herein; and

5.      Defendant be awarded such other and further relief as the Court deems just and proper.

Dated:  October 28, 2021

LINDBERGH PORTER
ROBERT M. GEIGER
LITTLER MENDELSON, P.C.

Attorneys for Defendant
RECOLOGY, INC.

4866-5893-6321.2 / 016440-2779

DEFENDANT'S ANSWER TO PLAINTIFFS' COMPLAINT

LITTLER MENDELSON, P.C.
333 Bush Street
34th Floor
San Francisco, CA 94104
415.433.1940

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|

NAME Lindbergh Porter, SBN 100091; Robert M. Geiger, SBN 322914

FIRM NAME: LITTLER MENDELSON, P.C.

STREET ADDRESS: 333 Bush Street, 34th Floor

CITY: San Francisco     STATE: CA     ZIP CODE: 94104

TELEPHONE NO.: 415.433.1940     FAX NO.: 415.399.8490

E-MAIL ADDRESS: lporter@littler.com; rgeiger@littler.com

ATTORNEY FOR (name): Defendant Recology, Inc.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco

STREET ADDRESS: 400 McAllister Street

MAILING ADDRESS:

CITY AND ZIP CODE: San Francisco, 94102

BRANCH NAME:

PLAINTIFF/PETITIONER: Gabriella Tabak, et al.

DEFENDANT/RESPONDENT: Recology, Inc., et al.

CASE NUMBER: CGC-21-594674

JUDICIAL OFFICER:

DEPARTMENT:

## PROOF OF ELECTRONIC SERVICE

1. I am at least 18 years old.

   a. My residence or business address is *(specify):*

   LITTLER MENDELSON, P.C.  333 Bush Street, 34th Floor, San Francisco, CA 94104

   b. My electronic service address is *(specify):*

   jvenegas@littler.com

2. I electronically served the following documents *(exact titles)* VIA ONELEGAL:

   Defendant's Answer to Plaintiffs' Complaint

   ☐ The documents served are listed in an attachment. *(Form POS-050(D)/EFS-050(D) may be used for this purpose.)*

3. I electronically served the documents listed in 2 as follows:

   a. Name of person served: Joel H. Siegal, Esq.; Richard L. Richardson, Esq.  SIEGAL & RICHARDSON, LLP

      On behalf of *(name or names of parties represented, if person served is an attorney)*:

   Plaintiffs Gabriella Tabak, Individually and as Guardian Ad Litem for Minors B.I.T., A.L.T., L.J.T.; the Estate of Adam Tabak, Deceased

   b. Electronic service address of person served :

   joelsiegal@yahoo.com; richard@rrichardsonlaw.com

   c. On *(date):* October 28, 2021

   ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment. *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

Date:  October 28, 2021

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Joanna Venegas
_____
(TYPE OR PRINT NAME OF DECLARANT)

► *(signature)*
_____
(SIGNATURE OF DECLARANT)

4878-9404-6465.1 / 016440-2779

Form Approved for Optional Use
Judicial Council of California
POS-050/EFS-050 [Rev. February 1, 2017]

**PROOF OF ELECTRONIC SERVICE**
**(Proof of Service/Electronic Filing and Service)**

Cal. Rules of Court, rule 2.251
www.courts.ca.gov

American LegalNet, Inc.
www.FormsWorkFlow.com

 



**Confirmation #:** 25815168
**Case Title:** GABRIELLA TABAK, INDIVIDUALLY AND AS
GUARDIAN AD ET AL VS. RECOLOGY, INC. ET AL

Thank you for choosing One Legal. If you have any questions about this order, please email us at
support@onelegal.com.

## CASE INFORMATION

| | |
|---|---|
| **Court Name:** | San Francisco County, Superior Court of California |
| **Court Branch:** | San Francisco-McAllister |
| **Case Title:** | GABRIELLA TABAK, INDIVIDUALLY AND AS GUARDIAN AD ET AL VS. RECOLOGY, INC. ET AL |
| **Case Category:** | General Civil |
| **Case Type:** | PERSONAL INJURY/PROPERTY DAMAGE - NON-VEHICLE RELATED |
| **Case #:** | CGC-21-594674 |

## ORDER DETAILS

| | |
|---|---|
| **Order Type:** | eFiling-eService |
| **Filing order #:** | 17145408 |
| **Date/Time Submitted:** | 10/28/2021 5:59 PM PT |
| **Client Billing Code:** | 016440.2779 |
| **Contact Name:** | Joanna Venegas |
| **Attorney Name:** | Robert Geiger |
| **Email Notification:** | Contact |

## DOCUMENTS

| Document Type | Document Title | Pages Uploaded |
|---|---|---|
| Answer (Original) | Defendant's Answer to Plaintiffs' Complaint | 8 |
| Proof of Service | Proof of Electronic Service | 1 |

## eSERVICE RECIPIENTS

| Name | Email |
|---|---|
| Lindbergh Porter | lporter@littler.com |
| Richard L. Richardson | richard@rrichardsonlaw.com |
| Joel H. Siegal | joelsiegal@yahoo.com |
| Robert Geiger | rgeiger@littler.com |

© One Legal LLC
Version: 7.0.20805.159-20211028 | Customer #0002256

Accessibility statement (https://www.onelegal.com/accessibility/)    |    Privacy policy

(https://www.onelegal.com/privacy/)    |    Terms of service (https://www.onelegal.com/terms/)

# EXHIBIT  F

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|

Joel H. Siegal [SB# 117044]
436 14th Street, Suite 1106
Oakland, California 94612

TELEPHONE NO.: (510) 271-6720     FAX NO. *(Optional)*: (510) 500-9512
ATTORNEY FOR *(Name)*: Gabriella Tabak, et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **SAN FRANCISCO**
STREET ADDRESS: 400 McAllister Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, 94102
BRANCH NAME: Civic Center Courthouse

*FOR COURT USE ONLY*

**ELECTRONICALLY**
**F I L E D**
*Superior Court of California,*
*County of San Francisco*

**08/20/2021**
**Clerk of the Court**
BY: JACKIE LAPREVOTTE
**Deputy Clerk**

CASE NAME:
Gabriella Tabak, et al. v. Recology, Inc., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: **CGC-21-594674** |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $25,000)    [ ] **Limited** (Amount demanded is $25,000) | [ ] Counter    [ ] Joinder <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: <br> DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[x] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [x] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary  b. [ ] nonmonetary; declaratory or injunctive relief  c. [x] punitive
4. Number of causes of action *(specify)*: 13
5. This case [ ] is [x] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: August 20, 2021

Joel H. Siegal
_____
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

## <u>NOTICE TO PLAINTIFF</u>

A Case Management Conference is set for:

**DATE:**    **JAN-19-2022**

**TIME:**    **10:30AM**

**PLACE:**   **Department 610**
                **400 McAllister Street**
                **San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

---

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order   **without an appearance**   at the case management conference if the case management statement is filed and served twenty-five days before the case management conference.

---

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.   **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

### <u>ALTERNATIVE DISPUTE RESOLUTION REQUIREMENTS</u>

---

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE SHOULD PARTICIPATE IN MEDIATION, ARBITRATION, NEUTRAL EVALUATION,  AN EARLY SETTLEMENT CONFERENCE, OR OTHER APPROPRIATE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**

(SEE LOCAL RULE 4)

---

Plaintiff  **must**  serve a copy of the Alternative Dispute Resolution (ADR) Information Package on each defendant along with the complaint.  (CRC 3.221.) The ADR package may be accessed at www.sfsuperiorcourt.org/divisions/civil/dispute-resolution or you may request a paper copy from the filing clerk.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the ADR Information Package prior to filing the Case Management Statement.

**Superior Court Alternative Dispute Resolution Administrator**
**400  McAllister Street, Room 103-A**
**San Francisco, CA  94102**
**(415) 551-3869**

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**