UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TABAK GABRIELLA,<br><br>    Plaintiff,<br><br>v.<br><br>RECOLOGY INC.,<br><br>    Defendant. | Case No. 21-cv-08460-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 21 |

Pending before the Court is Defendant Recology Inc.'s motion to compel arbitration. Dkt. No. 21. The Court requested supplemental briefing. *See* Dkt. No. 32. Having reviewed the parties' briefs, the Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

I. **ALLEGATIONS**

Plaintiffs in this case are the surviving family and estate of Adam Tabak, the former controller of Recology, who took his own life in January 2021. Plaintiffs bring claims for wrongful death/survival in negligence; negligent hiring, supervision and retention; false imprisonment; intentional or reckless false statements; deceit; violations of California Government Code Sections 12940 and 12940(m); failure to engage in the interactive process; disability discrimination; termination in violation of public policy; violations of the FMLA and CFRA; and civil RICO violations. Dkt. No. 14 (First Amended Complaint ("FAC")). Defendants contend that all of these claims must be pursued in arbitration.

II. **LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, sets forth a policy favoring

arbitration agreements and establishes that a written arbitration agreement is "valid, irrevocable, and enforceable." 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (noting federal policy favoring arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (same). The FAA allows that a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. This federal policy is "simply to ensure the enforceability, according to their terms, of private agreements to arbitrate." *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). Courts must resolve any "ambiguities as to the scope of the arbitration clause itself . . . in favor of arbitration." *Id.*

When a party moves to compel arbitration, the court must determine (1) "whether a valid arbitration agreement exists" and (2) "whether the agreement encompasses the dispute at issue." *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). The agreement may also delegate gateway issues to an arbitrator, in which case the court's role is limited to determining whether there is clear and unmistakable evidence that the parties agreed to arbitrate arbitrability. *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). In either instance, "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019) (citing 9 U.S.C. § 2).

### III. DISCUSSION

In support of the motion to compel arbitration, Defendant contends that Adam Tabak signed and agreed to Recology employment contract, which contained an arbitration agreement. *See* Dkt. No. 21 at 6–8. The Agreement states:

> Except as otherwise provides, this Agreement applies, without limitation, to claims based upon or related to discrimination, harassment, retaliation, defamation (including post-employment defamation or retaliation), breach of contract or covenant, fraud, negligence, breach of fiduciary duty, trade secrets, unfair competition, wages, minimum wage and overtime or other compensation or monies claimed to be owed, meal breaks and rest periods, termination, tort claims, common law claims, equitable claims, and Claims under the

> Defend Trade Secrets Act, Fair Credit Reporting Act, Civil Rights Act of 1964, Americans with Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act except for claims for employee benefits under any benefit plan sponsored by the Company and covered by the Employee Retirement Income Security Act of 1974), Affordable Care Act, Genetic Information Non-Discrimination Act, Uniformed Services Employment and Reemployment Rights Act, Worker Adjustment and Retraining Notification Act, Older Workers Benefits Protection Act of 1990, Occupational Safety and Health Act, Consolidated Omnibus Budget Reconciliation Act of 1985, state and local statutes addressing the same or similar subject matters, and all other federal, state, or local legal claims arising out of or relating to Your application for employment, employment, or termination of employment.

*See* Dkt. No. 21-1, Ex. B ("Arbitration Agreement") at 1.  Defendant urges that Plaintiff is bound by this agreement, and that her claims fall within the scope of it.

Plaintiff Gabriella Tabak does not appear to challenge that an arbitration agreement existed between Mr. Tabak and Defendant with respect to all legal claims "arising out of or relating to [Mr. Tabak's] application for employment, employment, or termination of employment."  She acknowledges that Mr. Tabak signed the agreement.  *See* Dkt. No. 27 ("Opp.") at 11.  Nevertheless, Plaintiff argues that she never signed an employment agreement with Defendant—her late husband did—so she cannot be bound by the arbitration provision.  *See id.* at 1–2, 16–17.  She urges that the motion to compel arbitration should be denied as to all of the causes of action.  *See id.*; *see also* Dkt. No. 33 at 1–2.  As discussed in more detail below, the Court finds that the motion turns on the nature of Plaintiff's causes of action.

### A.   Survivor Claims

Plaintiff repeatedly states that she did not personally sign the arbitration agreement.  *Id.*  However, "[t]here are circumstances in which nonsignatories to an agreement containing an arbitration clause can be compelled to arbitrate under that agreement."  *See Suh v. Superior Ct.*, 181 Cal. App. 4th 1504, 1513 (Cal. Ct. App. 2010).[1]  Such exceptions "generally are based on the

---

[1] Here, the arbitration agreement states that it is governed by the FAA.  *See* Arbitration Agreement at 1.  However, the parties appear to agree that California substantive law applies.  *See* Opp. at 7–8; *see also* Dkt. No. 28 ("Rep.") at 3–4 (applying California law to question of unconscionability); *see also* Arbitration Agreement at 2 ("The Arbitrator shall apply the substantive federal, state, or local law applicable to the claim(s) asserted.").

3

existence of a relationship between the nonsignatory and the signatory, such as principal and agent or employer and employee, where a sufficient 'identity of interest' exists between them." *DMS Servs., LLC v. Superior Ct.*, 205 Cal. App. 4th 1346, 1353 (Cal. Ct. App. 2012) (quotations omitted).

Here, there is a sufficient "identity of interest" between Plaintiff and Mr. Tabak. Plaintiff brought this case "as representative of the Estate of Adam Tabak, deceased." *See* FAC at ¶ 7. Plaintiff also appears to acknowledge that 13 of the 14 causes of action she asserts in the FAC are "survivor claims." *See* Opp. at 20–22; *see also* Dkt. No. 33 at 1–3 (distinguishing the wrongful death action as "separate" and "distinct" because it belongs solely to Plaintiff and her children). Because these claims are derivative of Adam Tabak's rights, the Court agrees that they are subject to the arbitration agreement in the same way that they would be if Mr. Tabak had brought them himself. As the California Court of Appeal has explained, "[a] decedent's successor in interest steps into the decedent's position as to a particular action," and therefore "he or she must also abide by the terms of any valid agreement, including an arbitration agreement, entered into by the decedent." *See Thomas v. Westlake*, 204 Cal. App. 4th 605, 614, n.5 (Cal. Ct. App. 2012) (quotations omitted); *see also San Diego Gas & Elec. Co. v. Superior Ct.*, 146 Cal. App. 4th 1545, 1553 (Cal. Ct. App. 2007), *as modified on denial of reh'g* (Feb. 21, 2007) (noting that survivor claims "merely prevent the abatement of the decedent's cause of action and provide for its enforcement by the decedent's personal representative or successor in interest"); Cal. Civ. Proc. Code § 377.20 ("[A] cause of action for or against a person is not lost by reason of the person's death."). The Court therefore agrees with Defendant that Plaintiff's survivor claims are subject to arbitration, even though Plaintiff did not sign the arbitration agreement herself.

To the extent Plaintiff suggests that these claims do not fall within the scope of the agreement or are otherwise not arbitrable, the Court finds that such issues are for the arbitrator—not the Court—to decide. "[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010). "Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that

dispute, so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original) (quotations omitted). Delegation clauses that are clear and unmistakable are enforceable. *See Rent-A-Ctr.*, 561 U.S. at 69, n.1; *Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 862 F.3d 981, 985 (9th Cir. 2017).

The agreement here provides that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, or alleged waiver of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *See* Arbitration Agreement at 2. This express delegation language satisfies the "clear and unmistakable" standard. *See Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) ("Clear and unmistakable evidence of an agreement to arbitrate arbitrability 'might include . . . a course of conduct demonstrating assent . . . or . . . an express agreement to do so.'") (ellipses in original) (citations omitted). Because the arbitration agreement clearly and unmistakably delegates any determination of arbitrability of particular claims to the arbitrator, the Court does not address those arguments here. The Court therefore **GRANTS** the motion to compel arbitration as to the 13 survivor claims.

### B.     Wrongful Death Claim

Plaintiff next argues that the wrongful death claims that she brings on behalf of herself and as guardian ad litem for her children cannot be compelled to arbitration. Opp. at 16–20; *see also* Dkt. No. 33 at 2–3. In response, Defendant contends that the arbitrability of the wrongful death claim is also a question for the arbitrator to decide. *See* Rep. at 3–9.

Before the Court can apply the delegation clause in the arbitration agreement to the wrongful death cause of action, Defendant must establish that there is a valid agreement between the parties. But Defendant fails to explain how Plaintiff is bound by the arbitration agreement as to the wrongful death claims. Unlike the survivor claims discussed in Section III.A above, Plaintiff brings the wrongful death claims on her own behalf, and not as a representative of the Estate. As the California Court of Appeal has explained, "[t]he cause of action for wrongful death belongs not to the decedent," but rather "is a new cause of action that arises on the death of the

1   decedent and it is vested in the decedent's heirs." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th

2   1256, 1263 (Cal. Ct. App. 2006) (quotations omitted).

3         In its supplemental brief, Defendant appears to suggest that the doctrine of equitable

4   estoppel should apply to compel Plaintiff—a non-signatory—to arbitrate the wrongful death

5   claims. *See* Dkt. No. 34 at 3–4. However, the case that Defendant relies on involved a

6   nonsignatory invoking an arbitration clause against a signatory "to arbitrate its claims when the

7   causes of action against the nonsignatory are intimately founded in and intertwined with the

8   underlying contract obligations." *See JSM Tuscany, LLC v. Superior Ct.*, 193 Cal. App. 4th 1222,

9   1237 (Cal. Ct. App. 2011) (quotations omitted). The court reasoned that "[t]he rule applies to

10  prevent parties from trifling with their contractual obligations." *Id.* (quotation omitted); *Garcia v.*

11  *Pexco, LLC*, 11 Cal. App. 5th 782, 786 (Cal. Ct. App. 2017) (same). Here, in contrast, Plaintiff is

12  not the signatory to the agreement. She simply has no contractual obligations under her husband's

13  employment agreement in her individual capacity. Defendant does not provide any authority—

14  and the Court has not found any—applying the doctrine of equitable estoppel to force a

15  nonsignatory to arbitrate these types of claims. The Court therefore **DENIES** Defendant's motion

16  to compel as to the wrongful death claims.

17      **C.**    **Section 1281.2(c)**

18        Lastly, Plaintiff argues that because of the factual overlap in the survivor claims and

19  wrongful death claims, the Court should stay arbitration pending litigation of the wrongful death

20  claims. *See* Opp. at 20–22. Plaintiff relies on California Code of Civil Procedure § 1281.2(c),

21  which provides that a court shall order parties to arbitrate "unless it determines that . . . [a] party to

22  the arbitration agreement is also a party to a pending court action . . . with a third party, arising out

23  of the same transaction or series of related transactions and there is a possibility of conflicting

24  rulings on a common issue of law or fact." Cal. Civ. Proc. Code § 1281.2(c). In such

25  circumstances, the court:

26

27        (1) may refuse to enforce the arbitration agreement and may order
          intervention or joinder of all parties in a single action . . . ; (2) may
          order intervention or joinder as to all or only certain issues; (3) may
28        order arbitration among the parties who have agreed to arbitration and

> stay the pending court action . . . pending the outcome of the arbitration proceeding; or (4) may stay arbitration pending the outcome of the court action . . . .

*Id.*

The parties disagree as to the applicability of § 1281.2 to this case. *Compare* Opp. at 8–9, *with* Rep. at 2–3, 9–10. Plaintiff suggests that although the arbitration agreement states that it is governed by the FAA, California procedural law should nevertheless apply. *See, e.g.*, Opp. at 8–9. Plaintiff points to the arbitration agreement's language that "[t]he Arbitrator shall apply the substantive federal, state, or local law applicable to the claim(s) asserted." *See* Arbitration Agreement at 1. However, this language is inapposite. It does not speak to what law governs the arbitration agreement itself. Nor does it adopt California's arbitration rules specifically, or even California procedural rules more generally.

Setting aside § 1281.2, however, the Court has the discretion to stay proceedings where appropriate. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) (finding that a district court's "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). To determine whether a *Landis* stay is warranted, courts consider: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962) (citing *Landis*, 299 U.S. at 254–55). A district court's decision to grant or deny a *Landis* stay is a matter of discretion. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007).

Here, the Court has granted the motion to compel arbitration as to 13 of the 14 claims in this case. As the parties appear to acknowledge, there is factual overlap among the claims. *See* Rep. at 10; *see also* Dkt. No. 33 at 2. It thus would be highly inefficient and would risk conflicting rulings if the litigation of the wrongful death claims and the arbitration proceeded in parallel. Yet the survivor claims are far broader than the wrongful death clams. For example, they

7

implicate considerations such as whether Defendant failed to accommodate Mr. Tabak, failed to engage in the interactive process, and unlawfully terminated his employment. Under the circumstances, allowing the arbitration to proceed first could streamline the case and ultimately conserve the parties' and Court's resources. Plaintiff also has not articulated what—if any—prejudice would result in allowing the arbitration to proceed first. The Court therefore finds that a *Landis* stay is warranted.

## IV.     CONCLUSION

Accordingly, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to compel arbitration and **STAYS** the case pending completion of arbitration. The Court compels arbitration as to the claims for negligent hiring, supervision and retention; false imprisonment; intentional or reckless false statements; deceit; violations of California Government Code Sections 12940 and 12940(m); failure to engage in the interactive process; disability discrimination; termination in violation of public policy; violations of the FMLA and CFRA; and civil RICO violations. The Court denies the motion as to the claims for wrongful death/survival in negligence.

The parties are directed to file a joint status report regarding the status of the arbitration proceeding 120 days from the date of this order and every 120 days thereafter unless otherwise ordered. The Clerk is directed to administratively close the case.

**IT IS SO ORDERED.**

Dated:   9/9/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge